Art Lange, Plaintiff-Appellant,

v.

Bert Bartlett and Pool Boys, Inc.,
Defendants-Respondents.

Court of Appeals

*No. 84-098. Submitted on briefs September 17, 1984.—
Decided November 21, 1984.*
(Also reported in 360 N.W.2d 702.)

For the plaintiff-appellant, the cause was submitted on the brief of *Reginald M. Hislop, Jr.,* of West Allis.

For the defendants-respondents, the cause was submitted on the brief of *Nikola Kostich* of *Styler, Kostich & Melnick,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   This is an appeal involving the division of assets of the dissolved partnership "Pool Boys," a swimming pool installation business. Art Lange, the retiring partner, appeals an award of half interest in the joint assets of the dissolved partnership, claiming the trial court should have considered profits from dissolution to the final accounting in determining the settlement. We agree and reverse.

Up to a point, the facts are not in dispute. Art Lange and Bert Bartlett worked together for several years on a part-time basis installing swimming pools. In 1972, they verbally agreed to form the partnership "Pool Boys" and began operating the business full-time. This arrangement continued until April of 1975 when Lange

told Bartlett that he no longer wanted to participate in the partnership. It is clear that Lange was not expelled as a partner; rather, he retired from the partnership. Bartlett eventually offered Lange $3,000 in payment for Lange's share of the partnership; Lange refused this offer. Subsequently, in 1978, Lange sued to recover his share of the partnership.

Before discussing the trial court's decision after trial, it is important for a clear understanding of this case to review the basic tenets of partnership law. *In re Estate of Schaefer*, 91 Wis. 2d 360, 283 N.W.2d 410 (Ct. App. 1979), offers a starting point in analyzing the statutes governing the dissolution of a partnership.

When a partner dies or retires, the partnership is dissolved. Sec. 178.26(1)(b) and (4), Stats. However, the partnership is not terminated upon dissolution; it continues until the wind-up of the partnership affairs are completed. *Schaefer* at 375, 283 N.W.2d at 418.

It is at this juncture, the point of dissolution, that the retiring partner makes an election. He can either force the business to "wind-up" and take his part of the proceeds, sharing in profits and losses after dissolution, or he can permit the business to continue and claim as a creditor the value of his interest at dissolution. *Id.* at 382, 283 N.W.2d at 421, quoting J. Crane and A. Bromberg, *Law of Partnership* § 86(c) (1968). The determination of whether the retiring partner consented to or acquiesced in the continuation of the business is a question of fact. *Schaefer* at 378, 283 N.W.2d at 420.

Thus, the first task for a trial court faced with making a settlement of a former partner's account after dissolution is to determine what election the retiring partner made at the point of dissolution. Every partnership dissolution causes a wind-up rather than a continuation

unless the outgoing partner "consents" to a continuation. Distinguishing in the first instance whether a wind-up or a continuation is at hand is critical simply because the settlement of the former partner's account differs depending on whether it is a wind-up or a continuation.

For instance, if a trial court determines that a business was engaged in a wind-up, the former partner receives the value of his or her interest at the date of liquidation or final settlement pursuant to sec. 178.33(1), Stats. *See Schaefer* at 376, 283 N.W.2d at 419. In other words, the outgoing partner shares in both profits *and losses* until termination. Crane and Bromberg, supra, § 86(c) at 495. The former partner, therefore, does not take as a creditor. The outgoing partner gets a share of the profits, if any, only after all of the other creditors have been paid and only until termination. *Schaefer* at 383, 283 N.W.2d at 422. Termination is the point in time when all of the partnership affairs are wound up. *McDonald v. McDonald*, 68 Wis. 2d 292, 301 n. 3, 228 N.W.2d 727, 732 (1975).

Continuation, however, effects a totally different settlement of the former partner's account. The outgoing partner can agree, at the time of dissolution, that the business will be continued. If the outgoing partner elects to allow the business to continue, then that partner has a second election—to receive either interest or profits from the date of dissolution—in addition to the value of his or her interest in the partnership. *Schaefer* at 382, 283 N.W.2d at 421, quoting Crane and Bromberg, supra, § 86(c) at 496–97; sec. 178.37, Stats. This "second election" can be made only by the former partner; it cannot be made by either the continuing partner or the trial court. The profits garnered from continuation are different from the profits at wind-up simply because, in a continuation, the outgoing partner is not responsible for

the debts of the continuing partnership. The outgoing partner, instead, takes as a creditor.

Although this election may seem somewhat one-sided as the retiring partner is no longer involved in the business, it "serves as 'a species of compulsion . . . to those continuing the business . . . to hasten its orderly winding up.' . . . The second election rests partly on the use of the outgoing partner's assets in the conduct of the business." Crane and Bromberg, supra, § 86(c) at 497 (footnote omitted); *see also Cauble v. Handler,* 503 S.W.2d 362, 366 (Tex. Civ. App. 1973). The right to a share of the profits exists only until the final accounting has been made. *Svihl v. Gress,* 216 N.W.2d 110, 117 (N.D. 1974); *Vanderplow v. Fredricks,* 32 N.W.2d 718, 721 (Mich. 1948). Once judgment is entered, then the former partner gets interest on the judgment, at the legal rate, until paid.[1]

---

[1] The record indicates that Bartlett offered Lange $3,000 for Lange's share of the partnership in 1975. However, the right to share in profits does not terminate when an offer is tendered. *See Moseley v. Moseley,* 196 F.2d 663, 664, 666, 667 (9th Cir. 1952).

It should be noted that Crane and Bromberg, plus at least one other jurisdiction, state that the right to profits does not end until it has been paid to the retiring partner. J. Crane and A. Bromberg, *Law of Partnership* § 86(c) at 497 (1968). *See also Cauble v. Handler,* 503 S.W.2d 362, 366 (Tex. Civ. App. 1973). Although unstated, it is apparently the view of these authorities that until the retiring partner has been paid, the continuing partners are still using the retiring partner's property to gain their profit.

Although we acknowledge the merit of this position, we do not adopt it. A policy of judicial administration is that lawsuits should come to an end sometime. Once the final accounting has been determined and a judgment is entered, it would be expensive and time consuming for parties and witnesses to come back into court to determine the amount of profit from the date of judgment until payment. Payment, even if made within a month, might be subject to a new round of scrutiny by experts on both

This election (whether to take the profits as described or to take interest on the value of the partnership at the date of dissolution) need not be made until there has been a final accounting of the partnership. The right of election which the retiring partner has is one which he should be permitted to exercise "after an accounting shall have been taken of the earnings subsequent to dissolution. Otherwise, the right of election would be an illusory one." *Moseley v. Moseley,* 196 F.2d 663, 666–67 (9th Cir. 1952).

Having analyzed the basic law, we now turn to the trial court's decision, which we hold is inconsistent with these tenets. The trial court found that a wind-up had taken place rather than a continuation. It then determined the worth of the assets at the date of dissolution and divided the value of those assets equally between the two parties. Instead of determining the value of the assets at the time of dissolution, it should have determined profits and losses from the date of dissolution to the date of the hearing. This would assume that the assets have been sold as part of the wind-up and the income derived therefrom added to the amount to be divided or that the trial court place a market value on the assets as if sold. It did not, and this alone is error.

Moreover, the trial court's decision is inconsistent with an earlier decision it made following a pretrial motion by Lange. At the conclusion of that earlier hearing, the trial court held that a continuation had taken place, not a wind-up.

We believe both parties were under the impression that the issue of wind-up vis-a-vis continuation had previously

sides as to the amount of profit accrued since the last court appearance, accelerating the costs of trial. That, added to the great workload of trial courts, compels us to conclude that the holding we adopt is more appropriate.

been settled in favor of continuation. In fact, the trial court itself stated at the beginning of the trial:

The Court understands that we are in a posture of trial before the Court *in connection with the issues which have not been determined in accordance with the prior court written decision in this matter.* [Emphasis added.]

The trial court later changed its mind. Rather than affirm the trial court's later holding that a wind-up had taken place, we remand in the interests of justice. Sec. 752.35, Stats. The reason is that the real issue in controversy has not been tried.

On remand, a bifurcated trial should be held. Following testimony as to whether a wind-up or a continuation occurred, the court should make its findings of fact. If the trial court finds that a continuation has occurred, then the second part of the trial should focus on the value of the partnership assets on the date of dissolution plus any evidence showing the profits made by the continuing business from the time of dissolution to the date of the hearing. Interest on the value of the former partner's share of the partnership should also be determined. At the conclusion of testimony, the trial court shall make a finding of the value of each. The former partner must make the second election at this point. Judgment should then be entered accordingly.

If the trial court finds that a wind-up occurred, then the evidence at the second part of the hearing should focus on the profits remaining after all of the creditors have been paid. The trial court then can make its decision of the value of the former partner's share and enter judgment in that amount.

Finally, we reach a contention by Bartlett which is found to be a common complaint in partnership dissolution in our research of cases across the country. Bartlett strenuously argues that the business has greatly

expanded since Lange left in 1975. He claims it is not the intent of the statutes to allow Lange to reap profits from aspects of the business which were not operating at the time of the partnership dissolution. Bartlett is incorrect. Section 178.37, Stats., states that the retiring partner may opt, in lieu of interest, for "profits attributable *to the use of his right in the property of the dissolved partnership . . . ."* (Emphasis added.) This figure may differ from year to year depending upon Bartlett's use of partnership property. Lange's partnership property includes not only the tangible assets but also any goodwill in the "Pool Boys" name and reputation prior to dissolution that would have contributed to the success of Bartlett's sauna, spa and hot tub business.

However, we understand Bartlett's concerns, and they can be addressed by compensating Bartlett for his efforts. Although authorities are not in accord regarding the problem of compensation to continuing partners in the absence of a specific agreement, we feel the better reasoned view is that one who continues a partnership business after dissolution and contributes substantial labor and management services is entitled to compensation for that effort. *See Timmermann v. Timmermann,* 538 P.2d 1254, 1262–63 (Or. 1975) ; *Schoeller v. Schoeller,* 497 S.W.2d 860, 870 (Mo. Ct. App. 1973) ; *Essay v. Essay,* 123 N.W.2d 648, 649 (Neb. 1963). *But see contra Wikstrom v. Davis,* 315 P.2d 597, 610 (Or. 1957).

We conclude that regardless of the expended effort on behalf of Bartlett, Lange is still entitled to a share of the partnership profit from the day of dissolution. However, a court can take into account the substantial labor and management services made by the continuing partner and deduct that amount before arriving at the figure of what profit is due the former partner.

*By the Court.*—Judgment reversed and cause remanded for a new trial.