Jerome E. GULL, Plaintiff-Appellant,

v.

Ruth VAN EPPS, and David L. Werth, Defendants-
Respondents.

Court of Appeals

*No. 93–0710. Submitted on briefs November 3, 1993.—Decided
May 19, 1994.*

(Also reported in 517 N.W.2d 531.)

609

610

For the plaintiff-appellant the cause was submitted on the briefs of *Edmund C. Carns* of *Hughes Mathewson Carns & Slattery* of Oshkosh.

For the defendants-respondents the cause was submitted on the briefs of *John R. Teetaert* and *Robert N. Duimstra* of *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.* of Appleton.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.   In this case we decide that the law partnership of Van Epps, Gull and Werth continued after dissolution solely for the purpose of winding up the affairs of the partnership. Therefore, the withdrawing partner, plaintiff-appellant Jerome E. Gull, is not entitled to share in fees from new business earned by Van Epps and Werth during the winding up of the partnership affairs. However, as to work in progress at the time of dissolution of the partnership, the net fees earned by all three partners remain the property of the partnership and are to be shared according to the sharing formula in effect at the time of dissolution. The fees include those earned by Gull on work in progress on accounts he took with him when he left the partnership.

The trial court denied Gull any share of the fees earned by the remaining partners after dissolution on the grounds that such sharing would constitute unethical fee-splitting. We conclude that as to fees earned on work in progress, the trial court erred. We therefore affirm the judgment insofar as the parties stipulated to

Gull's share of accounts receivable and the furniture, furnishings and library, but reverse the judgment as to Gull's claim to fees earned on work in progress and remand this matter to the trial court with directions to wind up the affairs of the partnership according to the principles set forth in this opinion.

## BACKGROUND

Gull, Ruth E. Van Epps, and David L. Werth practiced law in an at-will partnership from January 1, 1984, until Gull withdrew effective December 31, 1987. Gull continued to serve his clients in the partnership offices until February 19, 1988, when he opened his own office in the same city. He took with him his clients and his files.

Despite serious attempts, the parties were unable to wind up the affairs of the partnership. Gull began this action for an accounting December 11, 1990. On December 10, 1991, during trial, the parties stipulated to Gull's share of the accounts receivable and the furniture, furnishings and library. However, the parties were unable to settle Gull's claim that he is entitled to his customary percentage of the "profits" of the partnership earned during the wind-up period, January 1, 1988 to December 10, 1991.

On December 23, 1992, the trial court entered judgment in favor of Gull according to the stipulation. However, the court denied Gull's claim for any share of the fees earned by Van Epps and Werth during the wind-up period. The court concluded that it would be unethical fee-splitting for Van Epps and Werth to share such fees with Gull.

## FEE-SPLITTING

We first address the fee-splitting issue. Van Epps and Werth cite Wisconsin Supreme Court Rule 20:1.5(e) (Law. Co-op 1994) which provides in part: "A division of fee between lawyers *who are not in the same firm* may be made only if: . . . ." (Emphasis added.) None of the enumerated exceptions apply here.

Section 178.25(2), STATS., of the Uniform Partnership Act,[1] provides: "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." After Gull's withdrawal, the partnership was dissolved, but until its affairs were wound up, the partnership remained intact for that purpose. Supreme Court Rule 20:1.5(e) does not apply to the division of fees in concluding the affairs of the partnership because, until that process is completed, the lawyers are in the same firm. We recognize that winding up the affairs of a law partnership involves non-economic responsibilities which the partners have to their clients. The discharge of those responsibilities does not present issues in this appeal.

## CONTINUATION OF PARTNERSHIP

We next consider Gull's claim that he consented to the continuation of the partnership and therefore, under *Lange v. Bartlett*, 121 Wis. 2d 599, 360 N.W.2d 702 (Ct. App. 1984), he may elect to share in the "profits" of the partnership earned after dissolution. We construe his claim to extend to fees earned by Van Epps and Werth on new work contracted for and performed during wind-up.

---

[1] Wisconsin was the second state to adopt the Uniform Partnership Act (U.P.A.). Laws of 1915, ch. 358.

Gull's claim is based on § 178.37, STATS., which was applied in *Lange*. That statute provides:

> When any partner retires[2] or dies, and the business is continued under any of the conditions set forth in s. 178.33(2)(b) or 178.36(1), (2), (3), (5) and (6), without any settlement of accounts . . . he . . . may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option . . ., in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership . . . . [Footnote added.]

In *Lange* we noted that different rules apply depending on whether a partnership is winding up its affairs or the business is continued. *Lange*, 121 Wis. 2d at 602, 360 N.W.2d at 704. Regardless of Gull's intent, the conditions under which the partnership could be continued under § 178.37, STATS., do not exist in this case. Section 178.37 applies if the business is continued "without any settlement of accounts . . ."; § 178.36(1), STATS., applies "if the business is continued without liquidation of the partnership affairs . . . ." In this case, the partners are settling their accounts and liquidating the partnership affairs. Section 178.37 does not apply

---

[2] We conclude that the word "retires" includes the circumstance in which a partner withdraws from the partnership. The section deals primarily with the rights of creditors when the business is continued without liquidation of the debts of the partnership dissolved by a change in personnel. UNIF. PARTNERSHIP ACT § 41 Official Comment, 6 U.L.A. 511 (1914). The circumstance which triggers dissolution of the partnership does not control whether the section applies.

when the partnership is continued only for the purpose of winding up its affairs. *See Hurley v. Hurley*, 91 A.2d 674 (Del. Ch. 1952) (construing the corresponding section of the U.P.A.).

When a partnership is liquidated, as here, § 178.33(1), STATS., controls. *First Nat'l Bank v. Schaefer*, 91 Wis. 2d 360, 376, 283 N.W.2d 410, 419 (Ct. App. 1979). We therefore conclude that Gull did not have the option under § 178.37, STATS., of receiving, in lieu of interest on his partnership interest, the profits of the partnership from new work contracted for and performed by Van Epps and Werth after dissolution.

Further, § 178.37, STATS., limits the "profits" a withdrawing partner may receive to those "attributable to the use of his right in the property of the dissolved partnership . . . ."

> The rationale for such a result is clear. The reason for awarding a retiring partner his share of the "profits attributable to the use of his right in the property of the dissolved partnership" is not because he still retains an interest in the business but rather "is intended to give him a return on assets belonging to him which still are being employed in the business by the remaining partner[s]."

*Oliker v. Gershunoff*, 241 Cal. Rptr. 415, 424 (Cal. Ct. App. 1987) (quoting *Sechrest v. Sechrest*, 248 Wis. 516, 518, 22 N.W.2d 594, 596 (1946)).

In a partnership performing professional services, the "profits" of the partnership are not ordinarily derived from the investment of capital but are attributable to the performance of services. "The profits of a professional, whether he works individually or jointly with other professionals in his field, are recognized as personal service income since the return attributable

618

to capital rather than individual skill and labor is negligible." Laura L. Crum, Comment, *Dissolution of a Law Partnership—Goodwill, Winding up Profits & Additional Compensation*, 6 J. LEGAL PROF. 277, 289 (1981).

In the dissolution of a property management partnership, the Wyoming Supreme Court refused to award the outgoing partner any post-dissolution profits where the only physical assets consisted of office furniture and a truck and the partnership profits were attributable to the remaining partner's labor. *Weisbrod v. Ely*, 767 P.2d 171, 175 (Wyo. 1989).

In winding up a real estate sales partnership, the Florida Court of Appeals held that the withdrawing partner was not entitled to profits earned by the remaining partner after dissolution. The court said:

> It must be borne in mind that the profits of the partnership were the result primarily of the performance of personal services. In the absence of particular circumstances affecting the situation, a partner whose only contribution to the firm is personal services or skill is not entitled to share the profits earned after dissolution of the partnership when his services ended upon the dissolution.

*Hilgendorf v. Denson*, 341 So. 2d 549, 551 (Fla. Dist. Ct. App. 1977) (per curiam). *See also Blut v. Katz*, 99 A.2d 785 (N.J. 1953) (where profits were primarily due to the surviving partners' skill and services, no part of them was allocable to the deceased's capital).

No specific provision of the Uniform Partnership Act (U.P.A.) requires the result reached in these cases. "The U.P.A.'s general approach to partnership dissolution is suited to closely held businesses, which do not ordinarily desire continuity of operations, but is not well adapted to businesses that ordinarily desire con-

tinuity, such as large law, accounting, and investment firms." 2 ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP § 7.01(c) (1994).

The U.P.A.'s maladaptation to the dissolution and liquidation of professional partnerships may be due in part to the fact that it was drafted at a time when such partnerships were relatively uncommon.[3] The subject of the Uniform Law on Partnership was first taken up by the Conference of Commissioners on Uniform State Laws in 1902. UNIF. PARTNERSHIP ACT Commissioners' Prefatory Note, 6 U.L.A. 5 (1914). The U.P.A. was approved by the Conference in 1914. *Id.* at 7.

Uniform Partnership Act § 42, and Wisconsin's corresponding § 178.37, STATS., follow the English Partnership Act of 1890. Note, *Winding up Professional Partnerships*, 33 HARV. L. REV. 1070, 1074 n.16 (1920).[4] The English Partnership Act codified the rule that an inquiry should be made upon dissolution of a partnership to determine how much of post-dissolution profits are attributable to the skill and services of surviving partners and how much of those profits are attributable to the capital employed in the business. *Id.* at 1073. The Wisconsin Supreme Court adopted this rule in a

---

[3] The National Conference of Commissioners on Uniform State Laws has proposed the Uniform Partnership Act (1993). UNIF. PARTNERSHIP ACT, 6 U.L.A. 227-94 (Supp. 1994). The Commissioners' comments are included in 2 ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP 171-306 (Supp. 1993) and are included in the U.L.A. Supplementary Pamphlet. UNIF. PARTNERSHIP ACT, 6 U.L.A. 227 (Supp. 1994).

[4] Uniform Partnership Act § 42 is substantially a codification of the common law. R.P. Davis, Annotation, *Construction and Application of § 42 of Uniform Partnership Act as to Rights of Parties Where Business is Continued After a Partner Retires or Dies*, 2 A.L.R.2d 1084, 1086 (1948).

pre-U.P.A. case, *Rowell v. Rowell*, 122 Wis. 1, 24-25, 99 N.W. 473, 481 (1904).

At the time the English Partnership Act was enacted, case law in England established a clear distinction between partnership profits which were attributable to the skill and industry of the surviving partners and those due to the capital of the deceased or withdrawing partner. *See* Note, 33 HARV. L. REV. 1070.

We are confident from this history that the U.P.A. embodies the principle that a deceased or withdrawing partner has no claim to post-dissolution profits where those profits are realized from the skill and services of the remaining partners. We therefore conclude that the trial court reached the correct result when it denied Gull's claim for his allocable share of post-dissolution fees earned by his former partners on new work during the wind-up period.

Our conclusion does not end our inquiry. Gull's claim extends to fees earned on post-dissolution services performed by members of the partnership to complete executory contracts pending at the time of dissolution. We therefore examine how these fees are to be determined and allocated by the trial court upon remand.

## WINDING UP

In the absence of agreement otherwise, the affairs of a partnership are to be wound up under the U.P.A. Mark H. Epstein & Brandon Wisoff, *Winding Up Dissolved Law Partnerships: The No-Compensation Rule and Client Choice*, 73 CAL. L. REV. 1597, 1598 n.6

(1985); *Girard Bank v. Haley*, 332 A.2d 443, 447 (Pa. 1975).[5]

"Winding-up" is the process of settling partnership affairs after dissolution and is often called liquidation. *Dreifuerst v. Dreifuerst*, 90 Wis. 2d 566, 570, 280 N.W.2d 335, 338 (Ct. App. 1979). However, the partnership is not terminated upon dissolution; it continues until the wind-up of the partnership affairs is completed. *Lange*, 121 Wis. 2d at 601, 360 N.W.2d at 703. Winding up of a partnership liquidates all assets into cash, pays off all debts, and then divides the profits. *Houstoun v. Albury*, 436 So. 2d 224, 226 (Fla. Dist. Ct. App. 1983). Where a voluntary settlement cannot be achieved because of partnership discord, as here, an action lies in equity for an accounting. *Union Bank v. Jones*, 411 A.2d 1338, 1344 (Vt. 1980). Unless otherwise agreed, a partnership may be wound up only through an accounting. *Stark v. Utica Screw Prods., Inc.*, 425 N.Y.S.2d 750, 752 (N.Y. City Ct. 1980). Section 178.38, STATS., provides: "The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary."

As noted, the winding up of the affairs of a partnership is controlled by § 178.33(1), STATS. *Lange,* 121 Wis. 2d at 602, 360 N.W.2d at 704. That statute provides in part:

---

[5] The U.P.A. has been adopted in all states but one and in the District of Columbia, Guam, and the Virgin Islands. 6 U.L.A. 1-2 (Supp. 1994). We may therefore consider decisions from those jurisdictions persuasive authority in construing provisions of the U.P.A.

When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners.

However, the rules for settling accounts are spelled out in § 178.35, STATS., which provides in part:

In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:

(1) The assets of the partnership are (a) the partnership property, (b) the contributions of the partners necessary for the payment of all the liabilities specified in sub. (2).

(2) The liabilities of the partnership shall rank in order of payment, as follows: (a) those owing to creditors other than partners; (b) those owing to partners other than for capital and profits; (c) those owing to partners in respect of capital; (d) those owing to partners in respect of profits.

(3) The assets shall be applied in the order of their declaration in sub. (1) to the satisfaction of the liabilities.

In this case, we are informed that all liabilities of the partnership have been satisfied. The assets of the partnership consisting of accounts receivable, furniture and furnishings and library have been valued and Gull has a judgment for his share of the agreed-upon value of these assets.[6] We are not informed whether at

---

[6] Gull does not appeal that part of the judgment which denied him compensation for good will.

the time of dissolution the partnership held executory contracts on a contingent-fee basis.[7] We therefore consider only the allocation of fees earned on the completion of work in progress at the time of dissolution.

While fees from new work normally do not belong to a dissolved partnership, BROMBERG & RIBSTEIN, § 7.08(e), at 7:81 & n.39, all partners of the dissolved firm are generally entitled to share in fees for pre-dissolution work in progress earned after dissolution, even if the client has exercised a right to discharge the attorney or attorneys who are sharing in the fees. *Id.* at 7:81-82 & nn.40-42. The dissolution of a partnership operates only with respect to future transactions; the partnership continues as to all existing matters until they are terminated. *United Counties Trust Co. v. Podvey*, 389 A.2d 515, 518 (N.J. Super. Ct. Law Div. 1978). On dissolution, the partnership remains in existence for the purpose of performing existing executory contracts. *Rossetti v. City of New Britain*, 303 A.2d 714, 718 (Conn. 1972). "The partnership entity continues in existence after dissolution until termination." BROMBERG & RIBSTEIN, § 7.01(b) & n.10. Until termination of the partnership, the interests of the partners in partnership assets, profits, liabilities and losses do not change. *Shepherd v. Griffin*, 776 S.W.2d 119, 122 (Tenn. Ct. App. 1989).

Perhaps the most difficult problem with regard to completion of work in progress concerns compensation for the partner who must complete the work. BROMBERG

---

[7] The sharing of fees earned on a contingent-fee contract when a law partnership is dissolved is thoroughly explored in *Beckman v. Farmer*, 579 A.2d 618 (D.C. 1990).

& RIBSTEIN, § 7.08(e), at 7:83. Section 178.15(6), STATS., and U.P.A. § 18(f) (1914) provide: "No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs." Section 178.15(6) allows extra compensation only when the partnership is dissolved due to the death of a partner and there is a surviving partner. It appears to be the rule in *inter vivos* cases—those in which a partner retires or withdraws—that the partner who completes work in progress is not entitled to any compensation beyond the fee he or she would have received for that work had the partnership not dissolved. BROMBERG & RIBSTEIN, § 7.08(e), at 7:83. However, the former partners of a dissolved law firm are entitled to reasonable overhead expenses, excluding partners' salaries, attributable to the production of post-dissolution partnership income. *Jewel v. Boxer*, 203 Cal. Rptr. 13, 19 (Cal. Ct. App. 1984).

Without citing the U.P.A., the court in *Puffer v. Merton*, 168 Wis. 366, 170 N.W. 368 (1919), affirmed the trial court decision that the estate of a deceased law partner was not entitled to share in the proceeds received for legal services rendered after the partner's death. The court distinguished a law firm from a mercantile firm, where, the court said, "there are usually contracts and other obligations in which the firm has a vested interest and is entitled to enforce, a part of which interest belongs to the estate of the deceased partner." *Id.* at 367, 170 N.W. at 368. *Puffer*, of course, did not involve an *inter vivos* case where a partner retired or withdrew from the firm.

The rule against extra compensation has been criticized, *see* Epstein & Wisoff, 73 CAL. L. REV. 1597, and some courts have held that a partner doing substantial extra work winding up files in a professional partnership is entitled to be compensated for this work. BROMBERG & RIBSTEIN, § 7.08, at 7:83 & n.47. For a discussion advocating this approach, *see* Crum, 6 J. LEGAL PROF. 277.[8] However, if the rule against extra compensation is to be modified, we believe the legislature must revise § 178.15(6), STATS. We therefore conclude that during wind-up, net fees from work in progress by Van Epps, Werth and Gull constitute an asset of the partnership and shall be allocated to each partner according to the partnership formula without any additional compensation to any partner.

When law partners cannot agree as to how the affairs of the law partnership are to be wound up, judicial resources in accomplishing wind-up may be considerably strained, depending on the size of the partnership and the nature of the partnership's practice. Fortunately, the trial court has broad discretion to accomplish a fair accounting between the parties because an action for the dissolution of a partnership

[8] The 1993 U.P.A., approved by the National Conference of Commissioners on Uniform State Laws, recreates § 18(f) of the 1914 U.P.A. [§ 178.15(6), STATS.,] to read: "A partner is not entitled to remuneration for services performed for the partnership, except for reasonable compensation for services rendered in winding up the business of the partnership." UNIF. PARTNERSHIP ACT § 401(h), 6 U.L.A. 250 (Supp. 1994). Under the revised provision, the right to extra compensation for completing work on executory contracts is not limited to the situation where the partnership is dissolved because of the death of a partner.

and the liquidation of its affairs is a proceeding in equity. *Caveney v. Caveney*, 234 Wis. 637, 652, 291 N.W. 818, 825-26 (1940). We affirm the portion of the judgment based upon the parties' stipulation and reverse the judgment as to Gull's claim to fees earned during the wind-up, and remand for the trial court to apply ch. 178, STATS., and its equitable powers to complete the wind-up of the affairs of this law partnership.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.