Thomas R. HURWITZ, Respondent,

v.

Michael B. PADDEN, Appellant.

No. C0–98–213.

Court of Appeals of Minnesota.

July 7, 1998.

Review Denied Aug. 31, 1998.

Considered and decided by SHORT, P.J., and HUSPENI and WILLIS, JJ.

## OPINION

SHORT, Judge.

Michael B. Padden seeks a quantum meruit recovery of legal fees from lawsuits acquired prior to the dissolution of the firm, Hurwitz & Padden, PLC. On appeal from the trial court's equal division of those fees, Padden argues the trial court erred in applying partnership principles to the law firm's dissolution.

## FACTS

In September 1991, Thomas R. Hurwitz and Michael B. Padden formed a two-person law firm, Hurwitz & Padden, PLC ("firm"), but failed to enter into a written partnership agreement. The partners shared all firm proceeds on a 50–50 basis, and reported all income as partnership income. In January 1993, Hurwitz filed articles of organization, which established the firm as a limited liability company with the Secretary of State. Neither party filed those articles with the Minnesota Board of Professional Responsibility.

On February 15, 1996, Padden notified Hurwitz that he wanted to dissolve their professional relationship as of March 1, 1996. The parties successfully resolved all business issues involving their relationship, except for the division of attorney fees from several of the firm's contingency fee cases. In August 1996, Hurwitz filed this declaratory judgment action against Padden seeking a formal dissolution, a post-dissolution distribution of attorney fees on a 50–50 basis, and injunctive relief. By counterclaim, Padden requested a full accounting and an award of defense costs and fees. Both parties filed cross-motions for partial summary judgment. The trial court found in favor of Hurwitz, deciding the contingency fees should be divided equally, and submitted all accounting matters to a referee. After adopting the referee's findings, the trial court entered judgment in favor of Hurwitz for $101,750.

## ISSUE

Did the trial court err in dividing contingency fees equally between former law partners where there was no written fee allocation agreement?

## ANALYSIS

A partnership is based on mutual trust and confidence. *Prince v. Sonnesyn,* 222 Minn. 528, 535, 25 N.W.2d 468, 472 (1946). In their dealings with one another, partners are subject to the highest standards of good faith and integrity. *Id.; see* Minn. Stat. § 323.20 (1996) (outlining fiduciary responsibilities of partners); *see also Evans v. Blesi,* 345 N.W.2d 775, 779 (Minn.App.1984) (stating shareholders in closely held corporation have fiduciary relationship), *review denied* (Minn. June 12, 1984). Without an agreement to the contrary, a partnership is dissolved under the Uniform Partnership Act (UPA). *Girard Bank v. Haley,* 460 Pa. 237, 332 A.2d 443, 447 (1975); *Gull v. Van Epps,* 185 Wis.2d 609, 517 N.W.2d 531, 535 (Ct.App.

1994); *see Stacker & Ravich v. Simon,* 411 N.W.2d 217, 225 (Minn.App.1987) (stating UPA applies unless contrary agreement), *review denied* (Minn. Nov. 13, 1987).

We are asked to determine whether, in the absence of a contrary agreement, pre-dissolution contingency fee files remain assets of a law firm following its dissolution. The case presents a question of law, which we review de novo. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984) (stating appellate court need not defer to trial court's analysis of purely legal issues).

■ Dissolution of a partnership triggers an end to the relationship, but it does not end the partnership itself. Minn.Stat. § 323.29 (1996). Despite a dissolution, a partnership relationship continues to exist until all issues involving the business of the partnership entity are resolved. *See* Robert W. Hillman, *Law Firms and Their Partners: The Law and Ethics of Grabbing and Leaving,* 67 Tex. L.Rev. 1, 41 (1988) (noting partnership continues until winding-up process completed). When the partnership's business is completely resolved, only then are the entity and the partnership relationship finally terminated. *See* Minn.Stat. § 323.29 (stating partnership continues until winding up of partnership affairs is completed).

■ As a partnership moves toward termination, it conducts a "winding up" of its affairs. *Id.* When a partnership is in this "winding up" stage, the UPA confers no right of compensation for services rendered by the partners in furtherance of the partnership business. *Resnick v. Kaplan,* 49 Md. App. 499, 434 A.2d 582, 587 (1981). The UPA provides:

> [n]o partner is entitled to remuneration for acting in the partnership business, except that a *surviving* partner is entitled to reasonable compensation for services in winding up the partnership affairs.

Minn.Stat. § 323.17(6) (1996)[1] (emphasis added).

■ During the period between dissolution and termination, partnership distributions continue to be made according to pre-dissolution rules. *Smith v. Daub,* 219 Neb. 698, 365 N.W.2d 816, 820–21 (1985); *see, e.g., Resnick,* 434 A.2d at 587 (holding "fees collected should be allocated according to the percentages specified in agreement for distribution of profits and losses"); *Thomas v. Marvin E. Jewell & Co.,* 232 Neb. 261, 440 N.W.2d 437, 442 (1989) (holding partnership agreement in effect at dissolution controls division of profit); Note, *Winding Up Dissolved Law Partnerships: The No–Compensation Rule and Client Choice,* 73 Cal. L.Rev. 1597, 1598–99 (1985) (noting under no-compensation rule, partners required to divide total fees collected according to their partnership interests during dissolution).

■ In addition, prior to the termination of the partnership, the partners' fiduciary duties continue to flow from the underlying partnership relationship. *See* Minn. Stat. § 323.20 (stating partners must account to partnership for all benefits obtained during liquidation of partnership). Pending contingency files are uncompleted transactions of the partnership, and the fees obtained from such cases are assets of the firm subject to distribution under the UPA. *See Beckman v. Farmer,* 579 A.2d 618, 636 (D.C.1990) (stating cases that are still pending during the winding-up stage are uncompleted transactions); *Ellerby v. Spiezer,* 138 Ill.App.3d 77, 92 Ill.Dec. 602, 485 N.E.2d 413, 417 (1985) (holding contingency fee cases are assets of partnership to be divided in accordance with UPA). Thus, in the absence of a contrary agreement, the partners' fiduciary duties extend to pre-dissolution contingency fee files. *See, e.g., Ellerby,* 92 Ill.Dec. 602, 485 N.E.2d at 416 (holding attorney's duty regarding unfinished business is to complete it for partnership, and the attorney could not use that unfinished business for personal gain).

1. Effective January 1, 1999, this section has been amended to provide:

   A partner is not entitled to remuneration for services performed for the partnership, *except for reasonable compensation for services rendered in winding up the business of the partnership.*

   1997 Minn. Laws ch. 174, art. 4, § 20 (to be codified at Minn.Stat. § 323A.4–01(h)).

Padden argues the trial court erred in applying partnership principles to the dissolution of a limited liability company. However, the Minnesota Limited Liability Company Act, Minn.Stat. §§ 322B.01–.960 (1996), specifically incorporates the definition and use of the term "dissolution" from the Uniform Partnership Act. See Minn.Stat. § 322B.03, subd. 15 (1996) (stating dissolution "obligates the limited liability company to wind up its affairs and to terminate its existence as legal entity"); Minn. Stat § 323.29 (stating partnership not terminated upon dissolution, but continues until winding up of partnership affairs completed). Under both statutes, the entity is not terminated upon dissolution, but continues until all business issues are resolved. Thus, the UPA provides guidance when examining the end stages of either entity's life. Moreover, the mere fact that the parties filed a limited liability company document with the state does not foreclose an examination of partnership law. See Fox v. Abrams, 163 Cal.App.3d 610, 210 Cal.Rptr. 260, 263 (1985) (applying no-compensation rule to professional corporations); Sullivan, Bodney & Hammond v. Bodney, 16 Kan. App.2d 208, 820 P.2d 1248, 1251 (1991) (holding in dissolution of law firm corporation, partners only entitled to receive payment from pending contingency fee cases according to their interest in the firm prior to dissolution); cf. Harris v. Mardan Business Sys., Inc., 421 N.W.2d 350, 353 (Minn.App. 1988) (stating reliance on partnership principles is appropriate when enforcing fiduciary duty among shareholders in close corporations because many close corporations are partnerships in a different name), review denied (Minn. May 18, 1988).

It is undisputed: (1) the firm had no written or oral agreement regarding the division of contingency fees upon dissolution; (2) the firm existed for approximately five-and-a-half years before Padden requested dissolution; (3) a little over five months elapsed between the date of dissolution and the date the parties cross-claimed to settle the firm's remaining issues; (4) the firm's contingency fee cases were acquired before the firm's dissolution; (5) prior to its dissolution, the firm divided fees equally between the parties; and (6) at the time the parties filed suit, the firm was in a winding-up phase. Under these circumstances, partnership principles, including the "no-compensation rule," govern the division of fees obtained from pre-dissolution contingency fee files. See Beckman, 579 A.2d at 640 (noting even commentators who criticize no-compensation rule as harsh recognize that it is "creature of statute and that attempts by courts to evade it are inappropriate"); see, e.g, Gull, 517 N.W.2d at 537 (holding, where state adopted no-compensation rule, net fees obtained from work in progress during wind-up are assets of partnership and shall be distributed to each partner according to the partnership agreement, and it is for legislature to modify rule if it so chooses); cf. In re L–tryptophan Cases, 518 N.W.2d 616, 619 (Minn.App.1994) (providing proper allocation of contingency fees between two law firms where there is no previous agreement on how to split fees with outgoing attorneys and that partnership of first firm was not winding up or in the process of dissolution); Stacker & Ravich, 411 N.W.2d at 220 (affirming trial court's allocation of fees on basis of time spent on each case where the parties agreed pending cases would not be treated as partnership assets). Thus, the contingency fees obtained from pre-dissolution case files must be divided equally between the parties, which is consistent with the pre-dissolution method of allocation. See, e.g., Hammes v. Frank, 579 N.E.2d 1348, 1356 (Ind.Ct.App.1991) (stating, without an agreement that states otherwise, "income produced by the winding up of unfinished partnership business is distributed to the former partners in proportion to their respective shares"); Resnick, 434 A.2d at 587 (rejecting quantum meruit payment to dissolved partnership as fees properly assets of partnership to be divided per partnership agreement); Smith, 365 N.W.2d at 820–21 (affirming trial court's conclusion that partner should be compensated for contingent fee cases assigned to him in winding-up in same ratio as was compensated in partnership). Our holding is consistent with those of other jurisdictions examining this issue. See, e.g., Jewel v. Boxer, 156 Cal.App.3d 171, 203 Cal. Rptr. 13, 16–17 (1984) (applying UPA to law firm dissolution and no-compensation rule dictated partners entitled to fees on contin-

gency cases based on partners' respective interests in dissolved firm); *Beckman,* 579 A.2d at 636 (concluding fees received after dissolution "are to be shared regardless of which former partner provides services"); *Ellerby,* 92 Ill.Dec. 602, 485 N.E.2d at 417 (stating, under· UPA, because dissolution of partnership was not caused by death of partner and in absence of an agreement discussing compensation for winding up partnership affairs, "partners are not entitled to compensation for working on partnership business after dissolution"). *But see Cofer v. Hearne,* 459 S.W.2d 877, 880 (Tex.Civ.App.1970) (holding law partner who does post-dissolution legal work on partnership business entitled to extra compensation).

■ Padden also argues the Minnesota Rules of Professional Conduct prohibit an equal division of the contingency fees because the parties failed to strictly comply with the fee-splitting requirements. *See* Minn. R. Prof. Conduct 1.5(e) (providing necessary requirements of fee-splitting agreement). However, the Model Rules of Professional Conduct "regulate the manner in which lawyers from *different* firms may split a fee." Minn. R. Prof. Conduct 1.5 (outlining manner in which attorneys from different firms can engage in fee-splitting); Laurel S. Terry, *Ethical Pitfalls and Malpractice Consequences Of Law Firm Breakups,* 61 Temp. L.Rev. 1055, 1083 (1988); *see also Gull,* 517 N.W.2d at 533 (concluding state statute equivalent of R. Prof. Conduct 1.5's inapplicable to fee splitting between members of partnership). Moreover, the· firm's contractual relationship with its clients does not terminate upon the firm's dissolution. *Saltzberg v. Fishman,* 123 Ill.App.3d 447, 78 Ill.Dec. 782, 462 N.E.2d 901, 907 (1984). Until the firm's affairs are wound-up, the entity remains intact for the purposes of completing its affairs, and lawyers remain in the same firm until that process is completed. *Gull,* 517 N.W.2d at 533. Prior to termination, the partners continue to owe one another a fiduciary duty to divide fees collected from works in progress at the time of the dissolution. *See Ellerby,* 92 Ill.Dec. 602, 485 N.E.2d at 416–17 (stating partner had duty to complete unfinished business of partnership).

Here, all of the pre-dissolution cases involved clients who retained the firm's representation. Thus, the clients "technically" belonged to the firm. *Saltzberg,* 78 Ill.Dec. 782, 462 N.E.2d at 907. Furthermore, the clients' retention of the firm constituted an implied consent to the fee-splitting structure between the firm's members. *See Ellerby,* 92 Ill.Dec. 602, 485 N.E.2d at 416 (stating once fee paid to attorney, not client's concern how fee distributed among attorney and partners); *cf. Christensen v. Eggen,* 577 N.W.2d 221, 225 (Minn. 1998) (concluding purpose of fee-splitting rule is to protect client's best interests, and stating to permit attorneys to proceed with fee-splitting agreement without client's knowledge "would put the client at a severe disadvantage in the lawyer-client relationship"). Such implied client consent occurs most every time a client seeks legal advice from a lawyer associated with a law firm. *See Ellerby,* 92 Ill.Dec. 602, 485 N.E.2d at 416 (concluding "perfectly proper" for fees to be split among law partners). Under these circumstances, the equal division of fees does not violate Minnesota's Rules of Professional Conduct.

■ Padden finally argues law firm dissolutions should be treated differently than non-legal partnerships because firm dissolutions implicate other ethical concerns flowing from the attorney-client relationship. *See Cofer,* 459 S.W.2d at 880 (declining to follow rule applicable to commercial partnership because it is "unconscionable and inequitable" in law firm context);· *see also* Comment, *Barefoot Shoemakers: An Uncompromising Approach to Policing the Morals of the Marketplace When Law Firms Split Up,* 19 Ariz. St. L.J. 509, 514–18 (1987) (arguing law partnerships are different from commercial partnerships and should be treated differently). *But see Sullivan, Bodney & Hammond,* 820 P.2d at 1250 (citing *Jewel,* 203 Cal.Rptr. at 18 and concluding no-compensation rule encourages· attorney's ethical conduct because it negates any incentive to take physical possession of remunerative cases in anticipation of retaining them upon dissolution). We agree ·professional rules and potential malpractice exposure compel lawyers to remain vigilant of client's interests and professional

responsibility requirements. However, there is no indication that the clients failed to make an informed decision when they retained the firm or that the attorneys acted unethically in the firm's representation of those clients. On these facts, we decline to carve out a statutory exception for the dissolution of this firm.

## DECISION

Contingency fee cases are partnership assets. In the absence of an agreement to the contrary, those fees are allocated, upon dissolution, according to partnership principles. Such an allocation of fees does not violate the Minnesota Rules of Professional Conduct.

**Affirmed.**