David Bushard, Plaintiff-Respondent,

v.

Steven A. Reisman and PressEnter, LLP,
Defendants-Appellants-Petitioners.

Supreme Court

No. 2009AP438. *Oral argument April 14, 2011.*
*—Decided June 30, 2011.*

2011 WI 51

(Also reported in 800 N.W.2d 373.)

For the defendants-appellants-petitioners there were briefs by *J. Drew Ryberg* and *Michael J. Happe* and *Ryberg & Happe S.C.* Eau Claire, and oral argument by *J. Drew Ryberg*.

For the plaintiff-respondent there was a brief by *Kay Nord Hunt, Thomas R. Jacobson,* and *Diane M. Odeen* and *Lomme, Abdo, Cole, King & Stageberg, P.A.,* Hudson, and oral argument by *Thomas R. Jacobson*.

¶ 1. ANN WALSH BRADLEY, J. The petitioners, Steven A. Reisman and PressEnter, L.L.P., seek review of an unpublished opinion of the court of appeals that affirmed orders of the circuit court requiring the equal distribution of PressEnter's profits to both partners, Reisman and David Bushard.[1] The circuit court determined that Reisman was not entitled to receive a salary

---

[1] *Bushard v. Reisman,* No 2009AP438, unpublished slip. op. (Wis. Ct. App., June 15, 2010), affirming orders of the circuit court for Pierce County, Robert W. Wing, J.

as compensation for the services he rendered in winding up PressEnter. It ordered that the wind-up of the partnership be completed.

¶ 2. Reisman argues that the circuit court erred by failing to apply equitable considerations when it determined that the partners were entitled to share equally in the partnership's profits and losses. In addition, he asserts that the circuit court erred by ordering summary judgment without making the threshold determination of whether the dissolution resulted in a wind-up or a continuation of the partnership.

¶ 3. In the absence of an agreement to the contrary, we conclude that the distribution of PressEnter's profits and losses is governed by Wis. Stat. § 178.15,[2] and that Reisman's equitable arguments are insufficient to overcome the plain language of the statute. We also determine that because there was no genuine dispute of material fact, the circuit court correctly concluded that the dissolution of PressEnter resulted in a wind-up, and it appropriately ordered summary judgment in favor of Bushard. Accordingly, we affirm the court of appeals.

I

¶ 4. In 1995, David Bushard and Steven Reisman formed PressEnter, a partnership dedicated to providing dial-up internet service to subscribers in western Wisconsin.[3] There was no written partnership agreement. Bushard and Reisman both contributed $15,000

---

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

[3] PressEnter filed articles of partnership with the Wisconsin Department of Financial Institutions in 1998.

---

*See Callaghan's Wisconsin Digest, same topic and section number.

575

in start-up capital, and they have been equal partners since PressEnter's inception.

¶ 5. It appears that the relationship between the partners began to deteriorate in 1999. Through his attorney, Bushard sent Reisman a document entitled "Notice of Dissolution of Partnership" on August 3, 1999:

> Please be advised that Mr. Bushard has chosen to exercise his right to dissolve the partnership, PressEnter L.L.P., effective August 31, 1999. Mr. Bushard is taking this step because (1) he believes this is an optimal time for selling the business at maximum value, and (2) the relationship between the partners has deteriorated to the point where it is impracticable for the two of you to manage the business of the partnership jointly.

The effect of Bushard's letter was to dissolve the partnership, effective August 31, 1999.[4]

¶ 6. The letter advised that Bushard thought the partnership could be sold for $3 million, and it further advised: "In the event you wish to continue to run the business either individually or with a new partner or partners, Mr. Bushard is willing to sell his partnership interest to you for a comparable amount." The letter concluded: "Please have your personal attorney contact me as soon as possible, so that we can arrange for an orderly wind-up or transition of the business."

---

[4] Wisconsin Stat. § 178.25, entitled "Dissolution of partnership defined," provides:

(1) The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.

(2) On dissolution the partnership is not terminated, but continues until the winding up of the partnership affairs is completed.

¶ 7. Around that time, Bushard courted Voyager.net as a potential buyer. Initially, Voyager.net expressed a willingness to purchase PressEnter for $3.5 million. Nevertheless, the attempt to sell PressEnter to Voyager.net was unsuccessful.

¶ 8. Bushard withdrew from participation in PressEnter. Reisman continued to run the day-to-day operations, and he made further attempts to sell the business.

¶ 9. After the 1999 dissolution of the partnership and Bushard's withdrawal from its day-to-day operations, Reisman continued to direct PressEnter to pay partnership draws (distributions) to both partners. Ultimately, PressEnter paid Reisman and Bushard approximately $2.3 million each in post-dissolution distributions.

¶ 10. In addition to receiving a partnership draw, Reisman started taking a "guaranteed draw" (a salary) in 2004. Reisman's salary ranged from $150,000 to $160,000 annually. In total, Reisman received $704,700 in salary from PressEnter between January 2004 and November 2008.[5]

¶ 11. In his deposition, Reisman averred that he had consulted with an attorney prior to taking a salary, and that the attorney told Reisman that he could compensate himself for the work he was doing in furtherance of the business. Reisman acknowledged that he had not specifically informed Bushard of his intention to take a salary and that he had not obtained Bushard's consent prior to doing so. He explained that he did not believe Bushard's consent was necessary because Bushard had withdrawn from the business.

---

[5] In 2008, Reisman started deferring the majority of his salary because PressEnter was short of cash on hand.

¶ 12. Bushard first learned that Reisman had been taking a salary in April of 2006 when he received a letter from Reisman detailing the efforts made to "keep the company viable in the face of the demise of [its] core business," dial-up internet services. The letter explained that Reisman would forego any increase in salary.[6] The letter further explained: "[L]ooking to the future, to preserve partner capital and minimize the risk of incurring debt, each partner's draw will be reduced to $7,500.00 per month, starting with the next distribution."

¶ 13. Bushard's attorney notified Reisman by letter that Bushard objected to Reisman taking any salary: "As you should know, under Wisconsin law, no partner is entitled to remuneration for acting in the partnership business, except with the express consent of the other partners or when winding up the partnership affairs."[7]

¶ 14. In November of 2007, Bushard filed a complaint against Reisman and PressEnter, alleging breach of fiduciary duty and unjust enrichment. He demanded an accounting of all partnership business and affairs from 1999 through present. He further demanded a money judgment against Reisman "in an amount equal to all funds taken from the Partnership without authorization," including Reisman's salary.

---

[6] Reisman's wife was employed as PressEnter's bookkeeper. The 2006 letter explained that she would also forego a salary increase.

[7] The letter also asserted that as a partner, Bushard was entitled to full physical access to the company and that he may be present at the company premises and will participate in the management and affairs of the company beginning on Wednesday, October 4, 2006. According to deposition testimony, Bushard went to PressEnter for two days in 2006, and then he stopped going altogether.

¶ 15. Reisman answered and counterclaimed with two counts of unjust enrichment, damage to business reputation, and breach of the duty of good faith and fair dealing.[8] He alleged that he had not been adequately compensated "for the fruits of his labor that produced massive sums paid to" Bushard after Bushard dissolved the partnership effective August 31, 1999.

¶ 16. Reisman then moved for summary judgment. He asserted that "Mr. Bushard's dissolution of the partnership caused the business to be in wind-up mode as no continuation was consented to." According to Reisman's brief to the circuit court, "Press Enter has

---

[8] The dissent asserts that Reisman counterclaimed for "an assessment" which "can be accomplished by an accounting." Dissent, ¶ 63. It is mistaken. Neither the word "assessment" nor the word "accounting" appear in Reisman's counterclaim. *See* answer and counterclaim, which is attached to this opinion as Exhibit A.

In making the assertion that Reisman counterclaimed for an "assessment," the dissent appears to rely on Reisman's counterclaim for unjust enrichment, which asserted:

[T]o the extent Mr. Reisman was not compensated for the valuable services he rendered, and because [Bushard] withdrew from the business and contributed no effort or services to it during the period at issue, payments to [Bushard] were disproportionately high and [Bushard] was thereby unjustly enriched in a sum to be determined by the trier-of-fact.

Alternatively, it may be that the dissent relies on Reisman's counterclaim for damage to business reputation, which asserted:

[Bushard] is aware that the filing of this lawuit is detrimental to the business interest of [PressEnter and Reisman]; to the extent of the damage to the business, [PressEnter and Reisman] are entitled to be compensated reasonably.

There are four counts to Reisman's counterclaim. None can be reasonably interpreted as requesting an "assessment" accomplished by an "accounting."

remained in wind-up mode since August of 1999," the date that Bushard "unilaterally and irrevocably caused the wind-up and dissolution of Press Enter, L.L.P." Reisman contended that he "did not need the consent of Mr. Bushard under Wisconsin law in order to draw compensation for his labor in winding up the partnership following Mr. Bushard's unilateral dissolution of the partnership." "Because the business is engaged in wind-up, not continuation," Reisman argued, "Mr. Bushard will receive the value of his interest at the date of liquidation or final settlement which has yet to occur."

¶ 17. Reisman argued that PressEnter's dissolution "is analogous to a deceased partner scenario" where the surviving partner is compensated for his services in winding up the partnership:

> The rationale behind the Uniform Partnership Act and thus the rationale for Wis. Stat. § 178.15(6) is that it is just and proper that the surviving partner should receive a reasonable allowance for his skill and industry in conducting the business, for during that time the business has not received the care and labor of the deceased partner, as an equivalent for such services.
>
> . . . .
>
> The 50/50 split of the partnership has been incredibly imbalanced in Mr. Bushard's favor since 1999. Although Mr. Bushard is not deceased, he has abandoned the partnership as though he were, leaving Mr. Reisman with all of the work in running the business while simultaneously winding-up Press Enter's affairs.

¶ 18. In an oral ruling, the circuit court denied Reisman's motion for summary judgment. It concluded: "[T]his is a wind-up situation, . . . there is not a surviving partner situation. This isn't where one party died

580

and the other partner survived and continued the business." It further determined: "The law says the partner who stays in the partnership during wind-up is not entitled to compensation, and the law is very clear in that regard." Accordingly, the court concluded that Reisman "is not entitled to any compensation for running the affairs of the partnership while the partnership is in wind-up status, pursuant to the Uniform Partnership Law and the law in the state of Wisconsin."

¶ 19. The parties disagreed on the effect of the court's ruling. Bushard contended that there were no issues left for trial, and he moved the court for summary judgment and an order requiring that the wind-up of PressEnter be completed. Reisman contended that the court's order had not resolved his counterclaim that Bushard had been unjustly enriched by Reisman's efforts in support of the partnership.

¶ 20. In contrast with his earlier assertions in the circuit court, Reisman contended that "[a] fact question exists concerning whether PressEnter, LLP is in a wind-up mode or simply a continuation that has been consented to by Mr. Bushard." Regardless of whether the dissolution had triggered a wind-up or a continuation, Reisman asserted that Bushard had been unjustly enriched because he had been overcompensated for his share of the value of the partnership. Reisman explained that the 1999 offer of purchase from Voyager-.net evinced that the value of PressEnter had been approximately $3.5 million at dissolution. He argued that Bushard had been amply compensated for his half of the 1999 value of the partnership by the payment of partner draws exceeding $2.3 million over the years.

¶ 21. After hearing arguments, the circuit court entered an amended order dismissing Reisman's counterclaims and ordering that the wind-up of PressEnter's

581

affairs be completed. The order directed Reisman to pay Bushard $352,350, half the amount that Reisman had taken in salary over the years.

¶ 22. The circuit court determined that its earlier order foreclosed Reisman from arguing that dissolution triggered a continuation rather than a wind-up:

> It's my strong opinion that the Court did find that this is a wind-up situation . . . [I]t was, in fact, admitted that this was a wind-up situation. The Court assumed it was a wind-up situation and found specifically it was a wind-up situation, so this isn't a situation where I can now find something different. That would be inappropriate. So, this is a wind-up situation.

It concluded that under the applicable law, Bushard had not been unjustly enriched: "[T]he arguments that are presented by [Reisman] really are back to arguments that say, I should be reimbursed, it's not fair I don't get paid for my services. And I don't think it's a matter of fairness, it's a matter of law, and the law says you don't."

¶ 23. The court of appeals affirmed in an unpublished opinion. *Bushard v. Reisman,* No 2009AP438, unpublished slip op. (Wis. Ct. App., June 15, 2010). Reisman petitioned this court for review, setting forth several issues.[9] In essence, he argued that equitable principles required reversal, and that the circuit court

---

[9] Specifically, Reisman asserted that the following four issues required resolution by this court: (1) whether an initial determination needs to be made about the manner of dissolution of a partnership in Wisconsin in deciding the appropriate measure for financial division between the partners; (2) whether, according to the dictates of *Estate of Matteson v. Matteson,* 2008 WI 48, 309 Wis. 2d 311, 749 N.W.2d 557, equity must be applied in determining the financial disposition between the parties; (3) whether the real controversy was determined in this matter where withdrawing partner allowed the

erred by ordering summary judgment without making a determination of whether the dissolution of PressEnter resulted in a wind-up or a continuation of the partnership.

## II

¶ 24. To resolve the issues presented by this case, we are required to interpret the statutes that govern the respective rights and obligations of partners. Statutory interpretation is a question of law. *Estate of Matteson v. Matteson,* 2008 WI 48, ¶ 22, 309 Wis. 2d 311, 749 N.W.2d 557. We interpret statutes independently from the interpretations rendered by the circuit court and the court of appeals. *Id.*

¶ 25. In addition, we are required to determine whether the circuit court erred by ordering summary judgment without making a determination of whether PressEnter's dissolution resulted in a wind-up or a continuation of the partnership. We review a grant of summary judgment independently of the determination rendered by the circuit court. *Green Spring Farms v.*

continuing partner to work an eleven-year period, drew $2.3 million in partnership distributions, initially insisted that a wind-up occur but later consenting to a continuation and in that eleven years, the continuing partner tried selling the business to effect the wind-up, was not able to do so and continued to operate the business successfully for eleven years, but, for the last 4.8 years received a salary that was less than market value for work needed by the partnership; and (4) whether, in the circumstances where the withdrawing partner is overcompensated by either the measure for a wind-up or continuation, a counterclaim for unjust enrichment lie in favor of the sustaining member who has done all of the work?

*Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). Whether the withdrawing partner elected a wind-up or consented to continuation is a question of fact. *Lange v. Bartlett,* 121 Wis. 2d 599, 601, 360 N.W.2d 702 (Ct. App. 1984).

¶ 26. We begin by evaluating Reisman's arguments that the circuit court erred by failing to apply equitable considerations when it determined that the partners were entitled to share equally in the partnership's profits and losses. We then turn to evaluating Reisman's assertion that the circuit court erred by ordering summary judgment without making the threshold determination of whether the dissolution resulted in a wind-up or a continuation of the partnership.

### III

¶ 27. In essence, Reisman urges us to reverse the court of appeals because the circuit court's application of the Uniform Partnership Law to the facts of this case achieved an inequitable result. Accordingly, we turn to examining the statutory mandates governing Wisconsin partnerships. In the absence of an agreement to the contrary, the rights and obligations of partners are governed by Wis. Stat. Ch. 178, which codifies the Uniform Partnership Act (UPA).

¶ 28. The UPA was enacted by the Uniform Law Commission in 1914. In a Prefatory Note, the Uniform Law Commission explained that uniformity in the law of partnership was desirable because "there exists an almost hopeless confusion of theory and practice, mak-

ing the actual administration of the law difficult and often inequitable." Prefatory Note, Uniform Partnership Act (1914).

¶ 29. Wisconsin adopted the provisions of the UPA shortly thereafter. *See* § 1, ch. 358, Laws of 1915. These provisions, as amended by the Wisconsin legislature throughout the years, can be found in Wis. Stat. Ch. 178. Although the Uniform Law Commission amended the UPA in 1997, Wisconsin has not yet enacted those amendments.

¶ 30. The UPA, as currently enacted in Wisconsin, sets forth default rules for determining the rights and duties of partners.[10] *See* Wis. Stat. § 178.15. Subsection (1) provides that partners share equally in the profits and losses of the partnership. Further, subsection (6) sets forth the general rule that no partner is entitled to remuneration for acting in the partnership business:

[10] The relevant portions of Wis. Stat. § 178.15 provide:

The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

(1) Each partner shall be repaid that partner's contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and, except as provided in s. 178.12(2), each partner must contribute towards the losses, whether capital or otherwise, sustained by the partnership according to that partner's share in the profits.

. . .

(5) All partners have equal rights in the management and conduct of the partnership business.

(6) No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his or her services in winding up the partnership affairs.

. . .

"No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his or her services in winding up the partnership affairs."

¶ 31. Under the default rules set forth in Wisconsin's UPA, there is only one exception to the general rule that no partner is entitled to remuneration for acting in the partnership business. Under this exception, a partner is entitled to extra compensation if he is a "surviving partner."

¶ 32. Wisconsin courts have strictly construed the term "surviving partner" to apply only to those partners who have survived another partner's death. We have explained that the term "surviving partner" does not contemplate a partner who continues to work at the business after another partner retires or withdraws from the business. *Matteson*, 309 Wis. 2d 311, ¶ 62 (2008) ("[E]xtra compensation [may be] accorded to surviving partners when a partnership is dissolved due to the death of a partner, which is not the case here[.]"); *see also Gull v. Van Epps,* 185 Wis. 2d 609, 625, 517 N.W.2d 531 (Ct. App. 1994) ("Section 178.15(6) allows extra compensation only when the partnership is dissolved due to the death of a partner and there is a surviving partner. It appears to be the rule in inter vivos cases—those in which a partner retires or withdraws—that the partner who completes the work in progress is not entitled to any compensation beyond the fee he or she would have received for that work had the partnership not dissolved.").

¶ 33. This interpretation of the term "surviving partner" is consistent with how that term is used in surrounding statutes. In the surrounding statutes, the term "surviving partner" describes a partner who has

survived another partner's death. *See, e.g.,* Wis. Stat. 178.21(3)(d) ("On the death of a partner the partner's right in specific partnership property vests in the surviving partner or partners[.]"); Wis. Stat. § 178.18(2) ("This section applies also to the representatives of a deceased partner engaged in the liquidation of the affairs of the partnership as the personal representatives of the last surviving partner.").

¶ 34. Wisconsin's interpretation of the term "surviving partner" is likewise consistent with how that term has been interpreted by the majority of states that have adopted the UPA.[11] An influential treatise explains that *"[u]nless the partners agree otherwise,* UPA § 18(f) [which has been codified in Wisconsin as Wis. Stat. § 178.15(6)] permits compensation of partners for post-dissolution winding-up services, *when dissolution is caused by death, but not in other cases."* Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein on Partnership* § 7.08(d) (emphasis added.)[12]

---

[11] *See, e.g., Couri v. Couri,* 447 N.E.2d 334, 339 (Ill. 1983) ("Absent an agreement, courts will not attempt to equalize compensation commensurate with services."); *Kennedy v. Kennedy,* 433 N.E.2d 1247, 1249 (Mass. App. 1982); *Chazan v. Most,* 209 Cal. App. 2d 519, 523 (Cal. Ct. App. 1962) ("There is no merit in Most's contention that he is a 'surviving partner.' That term refers to the partner who survives after the death of the other."); *Maus v. Galic,* 669 N.W.2d 38, 46 (Minn. App. 2003); *Mehl v. Mehl,* 786 P.2d 1173, 1175 (Mont. 1990) ("This statute is clear. In the absence of any agreement to the contrary, partners are not entitled to any wages unless one of the partners dies and the surviving partner winds up the partnership."); *Smith v. Daub,* 365 N.W.2d 816, 821 (Neb. 1985).

[12] The dissent appears to conclude that each partner's respective interest in the partnership may fluctuate based on the comparative value of the "personal services, skill, or knowledge" that partner has contributed to the partnership at any

¶ 35. The UPA's hard-and-fast rule against partner remuneration has been criticized as inequitable by commentators and courts alike. One commentator has concluded that "in general, U.P.A. case law has been less equitable than pre-U.P.A. case law on compensation. Leonard Charles Schwartz, *Compensation of A Partner for Services: Problems in Interpreting the U.P.A. and Partnership Agreements*, 19 Sw. U. L. Rev. 1, 2 (1990). Other commentators observe that "the no-compensation rule leads to inequitable results whenever the division of partnership profits is not proportional to the work load of some partners during the winding-up period." Mark H. Epstein & Brandon Wisoff, *Winding Up Dissolved Law Partnerships: The No-Compensation Rule and Client*

---

given time. Citing *Thompson v. Beth,* 14 Wis. 2d 271, 111 N.W.2d 271 (1961), it asserts that "when one partner contributes personal services, skill, and knowledge to the partnership, these contributions can be taken into account when valuing that partner's share of the partnership at termination." Dissent, ¶ 85; *see also id.,* ¶ 62. It concludes that a circuit court can determine that the partners' shares of the partnership "may no longer be in the same percentages as they were when the partnership commenced." *Id.,* ¶ 86.

The consequences of the dissent's assertion are unsettling. Imagine the amount of litigation that such a rule would foster between disgruntled partners.

The dissent's assertion misreads the facts and holding of *Thompson.* In that case, the partners formed a partnership, agreeing that "Beth was to pick up the option and [Thompson] was to do the construction work." 14 Wis. 2d at 274. "On that basis," the partners agreed that Thompson would have a one-third share in the partnership. *Id.* at 274, 275. When Thompson sued for his partnership interest, he was not asking the court to revalue his percentage share of the partnership based on his labor, as the dissent suggests. Rather, he was seeking "his one-third partnership interest," that is, one-third of the profits from the sale of partnership property. *Id.* at 280.

*Choice,* 73 Cal. L. Rev. 1597, 1599 (1985). As a result, some cases have departed from the rule set forth in the UPA: "When the circumstances indicate that the partners would not expect equal division of work and compensation on inter vivos dissolution (for example, when a partner has withdrawn from further participation in the business), some courts have permitted post-dissolution compensation." Bromberg & Ribstein, *supra,* 7:08(d).[13]

¶ 36. In the 1990s, the Uniform Law Commission "spent significant effort" modernizing the rules governing partnership breakups. Prefatory Note, Uniform Partnership Act (1997). The Revised Uniform Partnership Act of 1997 provides in part that a partner may receive reasonable compensation for services rendered winding up the business of the partnership:

> A partner is not entitled to remuneration for services performed for the partnership, *except for reasonable compensation for services rendered in winding up the business of the partnership.*

Uniform Partnership Act (1997) § 401(h) (emphasis added); *see also Gull,* 185 Wis. 2d at 626 (citing the draft of the revisions that had been promulgated in 1993).

¶ 37. The Uniform Law Commission's prefatory comments confirm that this revision is intended to be a substantive change in the law: "Subsection 401(h) deletes the UPA reference to a 'surviving' partner. That means any partner winding up the business is entitled

---

[13] The dissent cites as examples cases that appear to depart from the rule set forth in the UPA. Dissent, ¶¶ 87–88 (citing *Essay v. Essay,* 123 N.W.2d 648 (Neb. 1963); *Vangel v. Vangel,* 291 P.2d 25 (Cal. S. Ct. 1955)). Subsequent cases from those jurisdictions have followed the UPA's rule. *See supra,* ¶ 34, n.11.

to compensation, not just a surviving partner winding up after the death of another partner." Uniform Partnership Act (1997) § 401 cmt. 9.

¶ 38. The Wisconsin legislature has not adopted the 1997 revisions. Accordingly, the 1997 revisions are not applicable to this case. Rather, the result is governed by Wis. Stat. § 178.15(6) and the Uniform Partnership Act (1914), which provides that "[n]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his or her services in winding up the partnership affairs."

██

¶ 39. In this case, it was Bushard's election to dissolve the partnership, and not his death, that led to the partnership's dissolution. Accordingly, Reisman is not a "surviving partner." Under the provisions of the UPA in effect in Wisconsin, Reisman is not entitled to remuneration for work performed in furtherance of the partnership, and Bushard is entitled to share equally in PressEnter's profits. Wis. Stat. § 178.15(6); Wis. Stat. § 178.15(1). The circuit court's order equally dividing PressEnter's profits between the partners is consistent with the statutory mandates.

¶ 40. Reisman argues that "the real controversy was not fully tried"[14] because "Mr. Bushard has been overpaid and it is unjust to permit Mr. Reisman to suffer so large a loss while he continues to be obligated to run the business while attempting to sell it, all without income for his efforts." Contrary to Reisman's

---

[14] Wisconsin Stat. § 751.06 permits this court to reverse a judgment of the circuit court if "the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried."

590

assertions, the real controversy in this case is not what distribution of PressEnter's profits is most equitable under the circumstances. Instead, the real controversy is what distribution is mandated by the plain language of the statute.

¶ 41. Additionally, we conclude that the circuit court did not err when it dismissed Reisman's counterclaim for unjust enrichment. A claim for unjust enrichment requires Reisman to show (1) he conferred a benefit on Bushard; (2) Bushard knew of the benefit; and (3) Bushard accepted or retained the benefit under circumstances that made it inequitable for him to retain the benefit. *Staver v. Milwaukee County,* 2006 WI App 33, 24, 289 Wis. 2d 675, 712 N.W.2d 387. Here, where the benefit that was conferred on Bushard is mandated by the statute, no claim for unjust enrichment may lie.

¶ 42. We are cognizant that the result mandated by the statute appears to be inequitable under the facts of this case. Nevertheless, a court "may not exercise its equitable authority if such exercise would ignore a statutory mandate." *GMAC Mortg. Corp. v. Gisvold,* 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998).

¶ 43. Wisconsin Stat. Ch. 178 reflects the legislature's public policy choices about the rights and obligations of partners in the absence of agreements to the contrary. As discussed above, the Uniform Law Commission has adopted revisions to the UPA that would ameliorate the harsh result reached in this case. Nevertheless, the Wisconsin legislature has not adopted these revisions. As the court of appeals concluded in *Gull,* "if the rule against extra compensation is to be modified, we believe the legislature must revise § 178.15(6), Stats." *Gull,* 185 Wis. 2d at 626.

¶ 44. The apparent inequity that results in this case underscores the value of a written partnership agreement. Commentators have explained that "the partnership statute is, to a large extent, a standard form agreement that can be varied by the parties. Because the standard form often produces unwanted results, partners are well advised to give careful advance consideration to dissolution and its consequences and to draft explicit agreements." Bromberg & Ribstein, *supra,* § 7.01(c).

¶ 45. If the provisions of the UPA are unsatisfactory, partners can and should protect their interests by agreeing to different terms.[15] In the absence of an agreement modifying the provisions of the UPA, a court should decline from fashioning an after-the-fact remedy in pursuit of an equitable result when that remedy contravenes the public policy choices established by the legislature.[16]

---

[15] "An agreement that one partner shall receive compensation for personal services to the partnership must be established by clear and satisfactory evidence. . . . Under the terms of the contract and the statute no implied obligation could arise." *Wales v. Wightman,* 247 Wis. 238, 244, 19 N.W.2d 243 (1945).

[16] We recognize that some dissolution cases have discussed the circuit court's discretion to perform an equitable accounting in a partnership dissolution. In *Gull v. Van Epps,* 185 Wis. 2d 609, 626–27, 517 N.W.2d 531 (Ct. App. 1994), the court of appeals asserted that "the trial court has broad discretion to accomplish a fair accounting between the parties because an action for the dissolution of a partnership and the liquidation of its affairs is a proceeding in equity." In *Lange v. Bartlett,* 121 Wis. 2d 599, 606, 360 N.W.2d 702 (Ct. App. 1984), the court of appeals asserted that "a court can take into account the substantial labor and management services made by the continuing

¶ 46. We conclude that the distribution of PressEnter's profits and losses is governed by Wis. Stat. § 178.15. Reisman's arguments about equity are insufficient to overcome the plain language of the statute.

IV

¶ 47. We turn next to examining Reisman's assertion that the circuit court erred by ordering summary judgment in favor of Bushard without making the threshold determination of whether the dissolution resulted in a wind-up or a continuation. Reisman contends that the dissolution of PressEnter resulted in a continuation, and that Bushard has already received distributions in excess of the continuation value of his interest in the partnership.

---

partner and deduct that amount before arriving at the figure of what profit is due the former partner."

We agree that judicial dissolution proceedings are equitable in nature. Nevertheless, a circuit court's equitable authority is circumscribed by the statutes, and a court erroneously exercises its discretion if it orders relief in contravention of the statutes. In *Matteson,* 2008 WI 48, ¶ 20, 309 Wis. 2d 311, 749 N.W.2d 557, this court explained that judicial dissolution is a proceeding in equity in which "circuit courts have broad discretion in achieving a fair accounting between the parties involved." The *Matteson* court explained that the circuit court's exercise of discretion would be upheld if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, arrived at a conclusion that a reasonable judge could reach." *Id.* The above cases should not be read as granting a court equitable powers to contravene the plain language of a statute. Whatever equity may be injected into a dissolution proceeding, a circuit court must apply a proper standard of law. Here, the applicable statute provides that in the absence of an agreement to the contrary, "[n]o partner is entitled to remuneration for acting in the partnership business." Wis. Stat. § 178.15(6).

593

¶ 48. Distinguishing in the first instance whether dissolution resulted in a wind-up or a continuation is critical because the settlement of the former partner's account differs depending on whether it is a wind-up or a continuation. *Lange,* 121 Wis. 2d at 602. One significant difference between wind-up and continuation is the date on which each partner's interest in the partnership is valued. When there is a continuation, the departing partner's interest in the partnership is valued on the date of dissolution. When there is a wind-up, by contrast, the value of the partnership on the date of dissolution is less significant. The important date is the date of termination, when the winding up of the partnership's affairs has been completed. *See Estate of Schaefer v. Schaefer,* 91 Wis. 2d 360, 422, 283 N.W.2d 410 (Ct. App. 1979).

¶ 49. Reisman contends that since the date of dissolution, Bushard has received semi-monthly partner distributions amounting to $2.3 million. He asserts that these payments have exceeded "the value of [Bushard's] interest in the dissolved partnership" on the date of dissolution. Wis. Stat. § 178.37. Accordingly, Reisman asserts, if dissolution resulted in a continuation, the partnership dividends paid to Bushard "were tantamount to buying out his interest in the business." Further, because Bushard would no longer be a partner, he would have no right to complain about any remuneration Reisman received from PressEnter.

¶ 50. Under the UPA, a partnership is generally dissolved when a partner chooses to leave the partnership. Wis. Stat. § 178.25. "It is at this juncture, the point of dissolution, that the [departing] partner makes an election." *Lange,* 121 Wis. 2d at 601. The departing

partner has two primary options: wind-up or continuation.[17] *Matteson,* 309 Wis. 2d 311, ¶ 25.

██

¶ 51. "Every partnership dissolution causes a wind-up rather than a continuation unless the outgoing partner 'consents' to a continuation." *Lange,* 121 Wis. 2d at 602. This court recently explained that it is improper for a circuit court to conclude that the dissolution of a partnership resulted in a continuation simply because the partnership's business actually continued.[18] Rather, the *Matteson* court reaffirmed that the relevant inquiry is whether the departing partner consented to continu-

---

[17] Wind-ups are governed by Wis. Stat. §§ 178.32–.33. A wind-up may involve selling the business as a going concern, or it may involve liquidation of the partnership's assets. *Matteson,* 309 Wis. 2d 311, ¶ 24. In a wind-up, the creditors are paid first, and then the remaining value of the partnership on the date of termination is distributed to the partners. *Id.*

By contrast, continuations are governed by Wis. Stat. § 178.37. When the departing partner consents to a continuation, that partner opts to permit the business to continue and elects to "receive[s] as an ordinary creditor an amount equal to the value of the [departing] partner's interest in the dissolved partnership." Wis. Stat. § 178.37. The withdrawing partner is also entitled to interest or, "in lieu of interest, the profits attributable to the use of the retired or deceased partner's right in the property of the dissolved partnership." *Id.*

[18] *See Matteson,* 309 Wis. 2d 311, ¶ 29 (disapproving of "[t]he court's interpretation of § 178.37 'continuation' as a default statutory scheme that applies when wind-up has not yet occurred rather than something requiring the exiting partner's affirmative consent"); *see also id.,* ¶ 34 n.18 ("The parties appear to remain confused about continuation being something a court 'finds' after a business takes too long to wind up rather than continuation being something the exiting party must clearly consent to and elect in lieu of wind-up at the time of dissolution.").

ation in lieu of wind-up at the time of dissolution. 309 Wis. 2d 311, ¶¶ 31, 34 n.18.

¶ 52. Here, the circuit court twice determined that the dissolution of PressEnter resulted in a wind-up rather than a continuation. In both instances, the circuit court's determination was made in the context of a motion for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).

¶ 53. The circuit court first determined that the dissolution of PressEnter resulted in a wind-up when Reisman filed a motion for summary judgment. In his brief and argument to the circuit court, Reisman repeatedly asserted that Bushard had not consented to a continuation, and therefore, the dissolution of PressEnter resulted in a wind-up.[19] During the hearing, Bushard's attorney observed: "[N]either side contends that this is a situation where Mr. Bushard chose continuation." Because the facts were undisputed, the circuit court appropriately determined: "[T]his is a wind-up situation[.]"

¶ 54. Several days later, Bushard filed a motion for summary judgment. At that point, Reisman's view of the facts changed. He asserted that "a fact question exists concerning whether PressEnter, LLP is in a

---

[19] Although Reisman now asserts that his statements in the circuit court were hypothetical, this assertion is not supported by the record of the actual proceedings. In his briefs to the circuit court, Reisman asserted that Bushard "unilaterally and irrevocably caused the wind-up and dissolution of Press Enter, L.L.P.," that "Press Enter has remained in wind-up mode since August of 1999," and that "Mr. Bushard's dissolution of the partnership caused the business to be in wind-up mode as no continuation was consented to." These statements are not hypothetical in nature.

wind-up mode or simply a continuation that has been consented to by Mr. Bushard."[20]

¶ 55. Despite his allegation that a question of fact remained, Reisman set forth no facts supporting his assertion that Bushard had consented to a continuation at the time of dissolution. Reisman acknowledged that "[n]ominally, the notice of dissolution spoke to a wind-up[.]" However, he asserted that there was an inference that Bushard had consented to a continuation because the partnership had, in fact, continued: "Mr. Bushard's practice has been . . . in the vein of continuation. . . . Mr. Bushard continued to receive partnership payments in the ensuing nine years . . . . He elected to have this be a continuation or at least there is a strong inference of that."

---

[20] During oral argument to this court, Reisman's attorney asserted that Wisconsin case law lacks clarity regarding the differences between wind-up and continuation:

> Counsel: I am uncertain, your honor, as to the context in which the case lies. I know that the court said it is a wind-up.
>
> Court: Didn't you stipulate?
>
> Counsel: On summary judgment I said that. I looked at those cases, the four seminal cases. The *Schaefer* case, the *Lange* case, the *Gull* case, the *Matteson* case. It is hard to know what happened in those cases because, for example in *Schaefer* the fellow thought that he was seeking a wind-up, but it was a continuation. In the *Lange* case, the court concluded there that it was a wind-up, but then divided it up on a continuation basis. In the *Gull* case, the continuation occurred to wind up the partnership, and in the *Matteson* case every single argument talked about wind-up but the decision sounded entirely on the issue of continuance . . . .

To the extent that counsel's assertion is correct and the guidance provided by our case law is less than clear, it underscores the importance of a departing partner making a clear election at the time of dissolution. When the partner's election at the time of dissolution is known by both parties, the parties' rights and obligations are certain and not subject to after-the-fact dispute.

¶ 56. The circuit court rejected Reisman's bare allegation that the dissolution resulted in a continuation. Our review of the record reveals that the circuit court was not presented with any evidence that Bushard consented to a continuation at the time of dissolution. It appears from Reisman's argument that no such evidence exists.[21]

¶ 57. Rather, the undisputed facts support the opposite inference, that Bushard did not consent to a continuation. After the dissolution, Reisman persisted in paying Bushard partnership distributions. Had Bushard consented to a continuation, he would not have been entitled to partnership distributions. Rather, his 50 percent share of PressEnter would have been fixed on the date of dissolution, and he would have received that amount as a creditor.

¶ 58. Because there was no genuine dispute of material fact, the circuit court correctly concluded that the dissolution of PressEnter resulted in a wind-up. The court's entry of summary judgment in favor of Bushard was appropriate.

¶ 59. Although the circuit court ordered that the wind-up of the affairs of the partnership be completed, we are unable to determine from the record the current status of the wind-up. If further action is warranted,

---

[21] Reisman now argues that the dissolution of PressEnter has "turned into either a continuation or a hybrid" because the partners were unable to sell the business and "[o]f necessity, the business continued." The dissent appears to advance the same argument. Dissent, ¶ 98. As we explained above, consent of the departing partner is necessary for dissolution to result in a continuation. It is improper to conclude that there was a continuation simply because the business took too long to wind up. *Matteson,* 309 Wis. 2d 311, ¶ 24.

this opinion should not be construed to limit the authority of the circuit court to conduct an accounting as long as it is consistent with the conclusions of this opinion and the statutory requirements for an accounting are met. See Wis. Stat. § 178.15(6).

¶ 60. In sum, in the absence of an agreement to the contrary, we conclude that the distribution of PressEnter's profits and losses is governed by Wis. Stat. § 178.15, and that Reisman's equitable arguments are insufficient to overcome the plain language of the statute. We also determine that because there was no genuine dispute of material fact, the circuit court correctly concluded that the dissolution of PressEnter resulted in a wind-up, and it appropriately ordered summary judgment in favor of Bushard. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

STATE OF WISCONSIN CIRCUIT COURT PIERCE COUNTY

DAVID BUSHARD,

 Plaintiff,

vs.

STEVEN A. REISMAN, and
PRESS ENTER. L.L.P.

FILED
PIERCE COUNTY

DEC 3 1 2007

PEG FEUCRHELM
CLERK OF CIRCUIT COURT

Case No. 07 CV 391
Case Code: 30703

## DEFENDANTS' ANSWER AND COUNTERCLAIM

NOW COME defendants, Steven A. Reisman and Press Enter, L.L.P., by their attorneys, Ryberg & Happe, S.C. and as and for an Answer to the Complaint and Counterclaim admit, deny and allege as follows:

1. Allege that the Complaint fails to state a claim upon which relief can be granted.

2. In the alternative, allege that the Complaint fails to state a claim as against defendant, Press Enter, L.L.P.

3. Deny knowledge or information sufficient to form a belief as to the allegations in paragraphs 3, 4, 5, and 6 and accordingly deny same and put plaintiff to his proof thereof.

4. Admit the existence of the letter dated August 3, 1999 referenced in paragraph 7, however, plaintiff agreed thereafter to continuing operation of the business by Mr. Reisman and his wife, Deena, voluntarily and on his own initiative ceased any involvement in the business and profited a great deal by the good faith, diligence, effort and skill of the Reismans.

Exhibit A

600

5. Deny the allegations in paragraphs 8 (the continuation was with the acquiescence and agreement of the plaintiff; moreover, efforts to sell were made diligently by Mr. Reisman, but were unsuccessful); 9, 10, 11, 12, 13, 14, 15 (in fact accounting records have been sent monthly to plaintiff and plaintiff has had full access to PressEnter, L.L.P.'s accounting, financial and other records including at all times after he abandoned the business), 16, 17, 18, 19, 21, 22, 23, 24, 25, 26 and 27.

6. Allege that paragraph 20 represents a legal conclusion to which no answer is required except to state Mr. Reisman demonstrated good faith in his dealings with plaintiff.

7. Allege that the applicable period of limitation has run with regard to plaintiff's Complaint; in the alternative, allege that waiver, estoppel, unclean hands and/or laches bar the purported claims by the plaintiff.

## COUNTERCLAIM

As and for a Counterclaim against plaintiff, David Bushard, defendants, Steven A. Reisman and Press Enter, L.L.P. allege and respectfully show to the Court as follows:

8. Allege that for many years defendant, Steven A. Reisman operated the business because plaintiff was not interested or competent to operate the business; for these many years, defendant, Steven A. Reisman was not appropriately compensated for the fruits of his labor that produced massive sums paid to the plaintiff; as a result, to the extent Mr. Reisman was not compensated for the valuable services he rendered, and because plaintiff withdrew from the business and contributed no effort or services to it during the period at issue, payments to plaintiff, David Bushard were disproportionately high and plaintiff was thereby unjustly enriched in a sum to be determined by the trier-of-fact.

2

601

9. Allege that efforts to sell the business were made diligently by Mr. Reisman at plaintiff's request, but for reasons outside of Mr. Reisman's control were unsuccessful; that due to the diligent and skillful operation of the business by defendant, Steven A. Reisman, plaintiff, David Bushard has been paid nearly $2.3 million since September 1999, which is nearly twice the sum of money which plaintiff would have netted from the overly optimistic sale terms he speculated were achievable in the correspondence dated August 3, 1999 (Exhibit B to the Complaint). That as a direct result of Mr. Reisman's efforts and careful stewardship of the business and his good faith toward plaintiff, plaintiff benefited greatly and was able to enjoy years of leisure and monthly payments of $30,000 at the expense of Mr. Reisman; that but for Mr. Reisman's years of effort, plaintiff's income in those many years would have been substantially lower; and that the extent of the unjust enrichment of plaintiff is substantial.

10. Allege that plaintiff did not engage in good faith and fair dealing with respect to Steven A. Reisman and that plaintiff has caused damage and injury to defendant, Steven A. Reisman including damage to his reputation.

11. Allege that the company, Press Enter, L.L.P. has been damaged by the unfounded assertions of the plaintiff and the frivolous action filed by the plaintiff which depresses the value of the business for dissolution and all other purposes; that plaintiff is aware that the filing of this lawsuit is detrimental to the business interest of defendant, Press Enter, L.L.P. and to defendant, Steven A. Reisman; to the extent of the damage to the business, defendants are entitled to be compensated reasonably.

WHEREFORE, defendants, Steven A. Reisman and Press Enter, L.L.P. demand judgment dismissing the Complaint of plaintiff on its merits together with costs, disbursements and

3

602

attorney's fees; on the Counterclaim, for judgment as against the plaintiff for a sum determined

to be appropriate together with interest, costs, disbursements and reasonable attorney's fees

Dated this ___ day of December, 2007.

RYBERG & HAPPE, S.C.

J. Drew Ryberg. (SBN: 1015940)
Attorney for Defendants

200 Riverfront Terrace
Suite 100
P.O. Box 1999
Eau Claire, WI 54702-1999
715-833-9699

4

603

¶ 61. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). This case arises from a notice of dissolution issued 11 years ago in a two-person partnership. The notice requested wind-up based on the retiring partner's anticipation of the sale of the parties' business, PressEnter, L.L.C., to Voyager.net for $3.5 million. Due to the fault of neither partner, Voyager.net did not purchase PressEnter. Although efforts to sell the business were ongoing for 11 years, it is undisputed that a purchaser has never been found.

¶ 62. David Bushard (Bushard) worked for PressEnter for only seven *days* during the 11–year period subsequent to his giving notice of dissolution. Steven Reisman (Reisman) worked on a full-time basis for PressEnter during those 11 years. I conclude that Wis. Stat. § 178.15(1) (2009–10)[1] permits consideration of the 11 years of service that Reisman provided to PressEnter as a contribution from him to the value of the partnership. Moreover, I conclude that Wis. Stat. § 178.19 requires an accounting to determine the interest of each partner in the partnership prior to liquidation so that it may be determined what part of the profits earned after dissolution are due to the use of each partner's contribution to the partnership. Although the considerations above are not driven by whether the partnership was in wind-up, continuation or some combination thereof for the 11 years subsequent to Bushard's notice of dissolution, the determination of whether it took 11 years for a wind-up or whether Bushard acquiesced to continuation when the sale to Voyager.net did not materialize is a fact question that cannot be determined on summary judgment.

[1] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

Accordingly, I would remand for an accounting of what is due to each partner, specifically, an accounting that will consider the relative contributions of each partner to the value of the partnership, in light of *Thompson v. Beth,* 14 Wis. 2d 271, 111 N.W.2d 171 (1961). I also conclude that whether PressEnter was in wind-up or continuation for the 11 years subsequent to dissolution rests on disputes of material fact and accordingly, it should not have been decided on summary judgment. On remand, the circuit court should hold an evidentiary hearing and revisit its conclusion that PressEnter was in wind-up for 11 years.

¶ 63. I dissent from the majority opinion for at least three reasons: First, the majority opinion does not correctly analyze Wis. Stat. § 178.15(1) in light of the claims of *both* Bushard and Reisman relative to their partnership contributions. The majority opinion employs § 178.15(1) only in light of Bushard's claim. Second, Reisman has counterclaimed for an assessment of the value that his efforts contributed to PressEnter over the 11 years subsequent to Bushard's withdrawing from active participation in the business. This can be accomplished by an accounting, to which Reisman has a statutory right pursuant to Wis. Stat. § 178.19. A remand may show Reisman owes Bushard money, as Bushard claims, or it may show that Bushard owes Reisman money because Bushard has been overpaid for his partnership interest based on his relative partnership contributions.[2] *Thompson,* 14 Wis. 2d at 277–79. Third, the majority opinion affirms the circuit court's factual finding that this was an 11–year wind-up, which

---

[2] The majority opinion holds that the profits of PressEnter, L.L.C., specifically those following the August 1999 notice of dissolution, were rightfully distributed equally between Reisman and Bushard. Majority op., ¶ 1.

is a fact question that cannot be decided on the summary judgment record before us. Accordingly, I respectfully dissent.

## I. BACKGROUND

¶ 64. The background underlying this review is ably set out in the majority opinion. Therefore, I relate only what is necessary to understand this dissent.

¶ 65. In 1995, Reisman and Bushard formed PressEnter, a partnership aimed at providing internet service to communities in western Wisconsin. At PressEnter's inception, Reisman and Bushard each contributed $15,000 to the partnership. They never entered into a written partnership agreement. They ran the partnership as equal partners, each with a 50 percent interest.

¶ 66. In August of 1999, following dissention between the partners, legal counsel for Bushard sent Reisman a notice of dissolution of partnership. The notice advised Reisman that:

> Mr. Bushard has explored the possibility of the sale of the business to third parties. He believes that a cash sale in the neighborhood of $3,000,000 is achievable, and that closing of such a sale could take place in a very short period of time. In the event you wish to continue to run the business either individually or with a new partner or partners, Mr. Bushard is willing to sell his partnership interest to you for a comparable amount.

Moreover, at one point in the letter, Bushard called the post-dissolution period the "winding up" of the partnership. Namely, he stated: "Please be assured that, during the winding up of the partnership, Mr. Bushard intends to cooperate fully in the interim management of the business."

606

¶ 67. However, their effort to sell PressEnter to Voyager.net was unsuccessful. Bushard then withdrew from participating in running PressEnter. According to Bushard's 2008 deposition testimony, in the nine-year period from August of 1999 to the fall of 2008, Bushard performed services for PressEnter on approximately seven days.[3]

¶ 68. Despite his lack of participation in PressEnter, Bushard continued to receive 50 percent of the net profits in PressEnter. In the initial nine-year period following the notice of dissolution, Bushard received at least $2.3 million in cash distributions, for which he worked a total of seven days.

¶ 69. However, during these nine years, Reisman worked full-time managing PressEnter. He took very little vacation and, at times, worked 60–70 hours per week. Even Bushard acknowledged that Reisman's technical expertise was a critical factor in PressEnter's success.[4] Reisman continued to attempt to find a buyer for PressEnter. In 2004, Reisman began compensating himself for the work he was doing. From 2004 to 2008, Reisman took a salary of between $150,000 and $160,000 per year.

¶ 70. More than eight years after sending the 1999 notice of dissolution, Bushard commenced the present lawsuit against Reisman and PressEnter, requesting liquidation of PressEnter, an accounting from

---

[3] Bushard considered his greatest contribution to PressEnter to be staying away and doing nothing for the partnership.

[4] During his deposition, Bushard was asked: "From a technical aspect in the conduct of the technical parts of the business of PressEnter, has Mr. Reisman done a brilliant job?" Bushard answered this question affirmatively: "To the best of my knowledge and belief, yes."

1999 to the present and a money judgment against Reisman for taking a salary for four years without Bushard's consent. Reisman and PressEnter counterclaimed for unjust enrichment based on Bushard's receipt of 50 percent of the net profits of PressEnter, when Reisman's contributions to the partnership had vastly exceeded Bushard's contributions.

¶ 71. On November 21, 2008, the circuit court held a hearing on the parties' summary judgment motions. At the hearing, neither party put forth arguments as to whether PressEnter was in wind-up or continuation. Bushard's counsel simply asserted that "neither side contends that this is a situation where Mr. Bushard chose continuation." Reisman's counsel also used the term "wind-up" at one point.[5]

¶ 72. After hearing arguments from the parties, the court concluded that Reisman was not entitled to compensation. The court stated:

> The only issue I had, as I see it, before me is: Given the fact this was a dissolution, that this is a wind-up situation, that the surviving—there is not a surviving partner situation. This isn't where one party died and the other partner survived and continued the business.
>
> The law is very clear. The law says the partner who stays in the partnership during wind-up is not entitled to compensation . . . .
>
> So the Court finds that Mr. Reisman is not entitled to any compensation for running the affairs of the partnership while the partnership is in wind-up status.

---

[5] When arguing that this is a matter of equity, Reisman's attorney stated, "And the equities of this case allow and should permit that Mr. Reisman receive the salary that he does; and that, in fact, that *wind-up* should allow—or, be continued so that a sale can occur."

¶ 73. Having so concluded, the court ruled in favor of Bushard.[6] The court of appeals affirmed. *Bushard v. Reisman*, No. 2009AP438, unpublished slip op. (Wis. Ct. App. June 15, 2010).

## II. DISCUSSION

### A. Standard of Review

¶ 74. Statutory interpretation is a question of law subject to our independent review; however, we benefit from the analyses in previous courts' discussions. *Spiegelberg v. State*, 2006 WI 75, ¶ 8, 291 Wis. 2d 601, 717 N.W.2d 641.

¶ 75. Summary judgment is appropriate only when there is no genuine issue of material fact. Oneida Cnty. Dep't of Social Servs. v. Nicole W., 2007 WI 30, ¶ 8, 299 Wis. 2d 637, 728 N.W.2d 652. It is fundamental that a court is not to find issues of fact on summary judgment. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). Rather, the court's job is to determine "only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment." *Id.*

### B. Partnership Principles

¶ 76. Wisconsin has adopted the Uniform Partnership Act (UPA) and has made amendments to it throughout the years. The UPA, as amended by the Wisconsin legislature, is found in Wis. Stat. ch. 178. In

---

[6] Following some confusion about the effect of the ruling at the November 21 hearing, the court held a second hearing on January 23, 2009, in which it reaffirmed its ruling in favor of Bushard.

the absence of a partnership agreement, ch. 178 creates a framework for the rights and duties of partners in a partnership.

¶ 77. This case involves the dissolution of a partnership that had no written partnership agreement. Dissolution is a change in the relationship of the partners. Wis. Stat. § 178.25. Dissolution can occur by an act of a partner, by bankruptcy of a partner, by the death of a partner or through judicial process. Wis. Stat. § 178.26; Wis. Stat. § 178.27.

¶ 78. Judicial decisions that address disputes subsequent to dissolution often discuss the "wind-up" of a partnership or the "continuation" of a partnership. *See, e.g., Estate of Matteson v. Matteson,* 2008 WI 48, ¶ 24, 309 Wis. 2d 311, 749 N.W.2d 557; *Lange v. Bartlett,* 121 Wis. 2d 599, 601, 360 N.W.2d 702 (Ct. App. 1984). Wind-up concludes when all the debts of the partnership are paid and all of the net assets are liquidated by distribution to the partners in cash or in kind. *Gull v. Van Epps,* 185 Wis. 2d 609, 617–18, 517 N.W.2d 531 (Ct. App. 1994). Whether wind-up is occurring or whether the business is in continuation mode is a question of fact. *First Nat'l Bank of Kenosha v. Schaefer,* 91 Wis. 2d 360, 378, 283 N.W.2d 410 (Ct. App. 1979).

¶ 79. Discussion of the concepts of wind-up and continuation subsequent to dissolution often lack the precision in terminology that would be helpful to understanding what the law requires and when it requires it. *Estate of Matteson,* 309 Wis. 2d 311, ¶ 29 (explaining the confusion that can exist when courts use some form of the word "continue" without determining whether a Wis. Stat. § 178.37 continuation has occurred). Some of the problem seems to arise from Wis. Stat. § 178.25(2), which states, "On dissolution the partnership is not

terminated, but *continues* until the winding up of partnership affairs is completed." (Emphasis added.)

¶ 80. When a partnership is in wind-up, the value of the withdrawing partner's account is not fixed until liquidation. The withdrawing partner takes his share of the profits and losses between dissolution and liquidation based on his relative "contributions, whether by way of capital or advances to the partnership property." Wis. Stat. § 178.15(1); *see also* Wis. Stat. § 178.33(1); *Lange,* 121 Wis. 2d at 601.

¶ 81. If the withdrawing partner consents to continuation of the business, he claims as a creditor of the partnership with the value of the withdrawing partner's interest fixed at the date of dissolution. In addition, he can obtain interest on that amount until termination of the partnership, or he can take a share of "the profits attributable to the use of [his] right in the property of the dissolved partnership." Wis. Stat. § 178.37. Acquiescence in the continuation of the business is sufficient for consent under Wis. Stat. § 178.36(3). *Schaefer,* 91 Wis. 2d at 378.

¶ 82. That consent to continuation does not have to be explicit was addressed in *Shepherd v. Griffin,* 929 S.W.2d 336 (Tenn. Ct. App. 1995). There, the Court of Appeals of Tennessee evaluated whether the Tennessee circuit court had erred in finding that the departing partner "impliedly consented to the continuation of the business by acting inconsistent with a desire to wind up and liquidate." *Id.* at 341 (internal quotation omitted). In concluding that the circuit court did not err, the court of appeals highlighted the fact that the departing partner allowed the other partner, "without objection, to continue to run the business of the former partnership after its dissolution." *Id.* Other courts have similarly opined that consent to continuation can be im-

plied. *See, e.g., Timmermann v. Timmermann,* 538 P.2d 1254, 1261 (Or. 1975) (stating that the departing partner can either force a wind-up and termination or, alternatively, he "may allow the business to continue *or accept the fact that it has continued*") (emphasis added); *Cauble v. Handler,* 503 S.W.2d 362, 366 (Tex. Civ. App. 1973) (same).[7]

C. Application

¶ 83. The majority opinion concludes that wind-up has occurred, but it does not recognize that this determination does not address the issue presented by Reisman's counterclaim. Reisman has asserted that Bushard was overpaid; whether the partnership was in continuation or in wind-up, this contention must be addressed.

¶ 84. Reisman asserts that Bushard was overpaid because Bushard does not have a 50 percent ownership in the partnership. Stated otherwise, Bushard and Reisman both contributed $15,000 cash to the partnership; however, Reisman has contributed 11 years of skilled services to PressEnter and Bushard has contributed only seven days of such services. In wind-up, the

[7] At the time *Shepherd v. Griffin,* 929 S.W.2d 336 (Tenn. Ct. App. 1995), *Timmermann v. Timmermann,* 538 P.2d 1254 (Or. 1975), and *Cauble v. Handler,* 503 S.W.2d 362 (Tex. Civ. App. 1973) were decided, the respective states had adopted and were applying some form of the Uniform Partnership Act. *See* Tenn. Code Ann. § 61-1-1205 (West 2002) (repealing the Uniform Partnership Act as previously adopted in Tennessee and replacing it with the Revised Uniform Partnership Act); *Thompson v. Coughlin,* 997 P.2d 191, 194–95 & n.7 (Or. 2000) (noting that Oregon Legislature adopted the Revised Uniform Partnership Act in 1997, thereby repealing the Uniform Partnership Act previously in effect); *Cauble,* 503 S.W.2d at 366.

withdrawing partner's interest is not determined until termination of the partnership when wind-up is complete. A partner's interest that will be returned to him is described in Wis. Stat. § 178.15(1) as "Each partner shall be repaid that partner's contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied."

¶ 85. In *Thompson*, Thompson asserted that the value of his interest in the partnership included the work that he did to further the partnership's business. *Thompson*, 14 Wis. 2d at 277.[8] In meeting this claim, we interpreted Wis. Stat. § 178.15(1). *Id.* at 278–79. We stated that "[t]he real issue in the case is whether, under the following statutes, the plaintiff's labor in the construction of the buildings comes within the definition of the words "contribution" and "capital" as used in [§ 178.15(1)]." *Id.* at 278. We held that in the absence of an agreement to the contrary, when one partner contributes "personal services, skill, and knowledge" to the partnership, these contributions can be taken into account when valuing that partner's share of the partnership at termination. *Id.* at 279 (citation omitted). In so holding, we distinguished § 178.15(6) because we concluded that subsec. (6) did not apply when what was contributed increased the value of the partnership. *Id.* at 278–79.

¶ 86. In *Lange*, the court of appeals instructed that if, on remand, the circuit court finds that wind-up has occurred, the court should then "make its decision of the value of the former partner's share." *Lange*, 121 Wis. 2d

---

[8] At the time of *Thompson v. Beth*, 14 Wis. 2d 271, 111 N.W.2d 171 (1961), the relevant statutory provisions in Wis. Stat. § 178.15 were found in Wis. Stat. § 123.15.

at 605. This is another way of directing courts to examine the relative contributions of the partners to the value of the partnership and when the partnership is terminated, recognizing that their interests may no longer be in the same percentages as they were when the partnership commenced. If the partner conducting wind-up of the partnership business also contributes additional value to the partnership, then his contribution in kind must be added to any financial contribution he originally made. In that regard, the court said, "we feel the better reasoned view is that one who continues a partnership business after dissolution and contributes substantial labor and management services is entitled to compensation for that effort." *Id.* at 606.

¶ 87. The rule set out in *Thompson* and *Lange* that when a partner's labor and skill subsequent to dissolution increases the value of the partnership business, that partner has increased the value of his share in the partnership, is followed in many jurisdictions. For example, in *Essay v. Essay,* 123 N.W.2d 648 (Neb. 1963), the Nebraska Supreme Court instructed that although partners may have been eligible to share equally in profits prior to dissolution, "Where the profits earned after dissolution and before a final accounting are attributable in part to the personal skill or services of a partner, it is a factor to be considered in the apportioning of the shares of the partners." *Id.* at 649.

¶ 88. In *Vangel v. Vangel,* 291 P.2d 25 (Cal. 1955), the California Supreme Court explained that an equal division of partnership assets may not be equitable "when the contribution to profits from capital is relatively minor in comparison to the contribution from the skills or services of one conducting the business. In such a case, the managing partner may be entitled to a greater share of the profits." *Id.* at 28.

¶ 89. In *Estate of Matteson,* we recognized that "the portion of the profits attributable to the [departing partner's] ownership interest must be distinguished from the portion attributable to the skill, time, efforts, and diligence of the remaining partners." *Estate of Matteson,* 309 Wis. 2d 311, ¶ 59 (citation omitted).

¶ 90. In the case before us, Bushard contends that Reisman's efforts for 11 years counted no differently in increasing the worth of the partnership than did his efforts for seven days. Bushard so contends even though he admits that Reisman's technical skills and knowledge increased the value of PressEnter. The relative values of each partner's contributions to the partnership should be determined on remand, valuing both their financial contributions and their skill and services that created increased value in the partnership. *Thompson,* 14 Wis. 2d at 277; *Lange,* 121 Wis. 2d at 605.

¶ 91. Once the values of these contributions are determined, a final accounting of this partnership is necessary to accurately determine each partner's interest in the partnership from dissolution to liquidation. Wis. Stat. § 178.19. This accounting should take into consideration the value of each partner's contributions that increased the value of the partnership.

¶ 92. In addition, because the question of whether wind-up or continuation occurred during the 11 years subsequent to dissolution is a question of fact on which there are material disputes, the circuit court should hold a fact finding hearing and then revisit its prior determination in regard to whether wind-up or continuation occurred.

¶ 93. As aforementioned, summary judgment is appropriate only when there is no disputed genuine issue of material fact, and a court is not to find issues of fact on summary judgment. *Preloznik,* 113 Wis. 2d at

116. Rather, the court's job is to determine "only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment." *Id.*

¶ 94. First, there is no denying that whether PressEnter was in wind-up or continuation for 11 years is a genuine issue of fact. As the law set forth above underscores, this often is a threshold determination. Consequently, one issue on remand is whether the wind-up/continuation determination was disputed at the circuit court. In other words, whether a factual dispute on this issue existed.

¶ 95. In granting summary judgment in favor of Bushard at the January 23, 2009 hearing, the circuit court found that whether PressEnter was in continuation or wind-up was not disputed based on the court's previous finding. Specifically, the court opined that it had previously "found specifically" that PressEnter was in wind-up, not continuation. Although the circuit court did not identify when it made this previous finding, assumedly the court is referring to its statement at the November 21, 2008 hearing. At that hearing, the court, in its conclusion, stated:

> The only issue I had, as I see it, before me is: Given the fact this was a dissolution, that this is a wind-up situation, that the surviving—there is not a surviving partner situation. This isn't where one party died and the other partner survived and continued the business.
>
> The law is very clear. The law says the partner who stays in the partnership during wind-up is not entitled to compensation . . . .
>
> So the Court finds that Mr. Reisman is not entitled to any compensation for running the affairs of the partnership while the partnership is in wind-up status.

¶ 96. Given that the November 21 hearing was a hearing on summary judgment, it would have been improper for the circuit court to make findings of fact. Rather, the court is to decide whether factual issues actually exist. *Preloznik,* 113 Wis. 2d at 116. At the November 21 hearing, the court did not decide whether a factual issue existed regarding the status of PressEnter, namely, whether it was in wind-up or continuation. Instead, at the November 21 hearing, the court seems to assume that PressEnter is in wind-up. However, the court did not explain why it so assumes or cite to any evidence in the record proving that PressEnter was in wind-up.[9] To the contrary, the court saw "the only issue" as whether Reisman was entitled to take a salary.

¶ 97. Moreover, my review of the record indicates that at the time of the summary judgment hearings, the circuit court was aware that PressEnter remained in operation from dissolution to the time of the hearing, a period spanning more than nine years. Moreover, the court knew that following the unsuccessful sale of PressEnter to Voyager.net in September of 2009, Bushard stopped participating in the partnership. This included Bushard ceasing any efforts to sell PressEnter to potential buyers.

¶ 98. The withdrawing partner can consent to continuation by acquiescing to the continuation of the

---

[9] I acknowledge that there was some indication by both parties at the November 21 hearing that they thought PressEnter was in wind-up. *See supra* ¶ 71 & n.5. However, an entire review of the November 21 transcript shows that the issue being discussed was whether Reisman was entitled to take a salary in addition to his share of the profits. Neither party focuses on the threshold issue of whether PressEnter was in wind-up or continuation.

partnership or can impliedly consent by acting inconsistent with a desire to wind-up the partnership's business and liquidate its assets. I, therefore, conclude that there were enough facts presented to the circuit court to create a genuine issue of fact as to whether PressEnter was in wind-up or continuation, i.e., whether Bushard had consented to continuation. Therefore, summary judgment should not have been granted.

## III. CONCLUSION

¶ 99. In conclusion, it is undisputed that Bushard worked for PressEnter for only seven *days* during the 11–year period subsequent to his giving notice of dissolution. Reisman worked on a full-time basis for PressEnter during those 11 years. I conclude that Wis. Stat. § 178.15(1) permits consideration of the 11 years of service that Reisman provided to PressEnter as a contribution from him to the value of the partnership. Moreover, I conclude that Wis. Stat. § 178.19 requires an accounting to determine the interest of each partner in the partnership prior to liquidation so that it may be determined what part of the profits earned after dissolution are due to the use of each partner's contribution to the partnership. Although the considerations above are not driven by whether the partnership was in wind-up, continuation or some combination thereof for the 11 years subsequent to Bushard's notice of dissolution, the determination of whether it took 11 years for a wind-up or whether Bushard acquiesced to continuation when the sale to Voyager.net did not materialize is a fact question that cannot be determined on summary judgment. Accordingly, I would remand for an accounting of what is due to each partner, specifically, an accounting that will consider the relative contributions

of each partner to the partnership, in light of *Thompson*. I also conclude that whether PressEnter was in wind-up or continuation for the 11 years subsequent to dissolution rests on disputes of material fact and accordingly, it should not have been decided on summary judgment. On remand, the circuit court should hold an evidentiary hearing and revisit its conclusion that PressEnter was in wind-up for 11 years. Accordingly, I respectfully dissent.